**STATE, ex BLACKWELL, Relator, v. BACHRACH et, COUNCIL OF CINCINNATI; LEONARD et, BOARD OF ELECTIONS, Respondents.**

Common Pleas Court, Hamilton County.

No. A-152440.   Decided April 9, 1956.

Stanley Goodman, Sol Goodman, Cincinnati, for plaintiff.

Ed F. Alexander, Robert P. Goldman, Cincinnati, for respondent members of council.

C. Watson Hover, Pros. Atty., Wm. J. Schmid, Asst. Pros. Atty., Cincinnati, for respondent Board of Elections.

## OPINION

By WEBER, J.

This case involves the question of the validity and sufficiency of a petition by certain electors of the City of Cincinnati, filed under the authority of **Sections 8** and **9 of Article XVIII of the Constitution of Ohio,** requesting the council of said city to submit to the electors thereof a

proposal for amending the charter of said city as to the method of electing members of council.

The court heretofore overruled a demurrer to the petition and upon re-argument of the same adheres to its previous ruling. The matter is now before the court upon the pleadings, the evidence and the arguments of counsel.

There were filed with council on February 7, 1956, 619 part petitions and on February 28, 158 part petitions, making a total of 777 part petitions containing 32,721 names. The required ten per cent is 15,388. The following five issues are raised by the answer and the denial contained in the reply:

1. That the relator is not a proper party to bring the action, because he does not undertake to represent, and does not represent, the signers of the petition.

As appears from the address of the relator given on his petition he is a resident of the city. This has not been disputed. In this case the relator is not invoking the aid of a mandamus merely for the purpose of enforcing or protecting a private right; the purpose of his application is the enforcement of a purely public right where the people of the city at large are the real parties in interest. In such a case the relator need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and, as such, interested in the execution of the laws.

**Brissel, et al. v. State, ex rel. McCammon, 87 Oh St 154, Syllabus 3:** "In a proceeding in mandamus where the relief sought is the enforcement of a public duty by a public officer or board, it is sufficient to sustain the right of the relator to maintain the suit, that he show that he is a citizen and as such interested in the execution of the laws."

See, also, page 170 and cases there cited; also **State, ex rel. Brophy, et al. v. City of Cleveland, 141 Oh St 518, 26 O. O. 87.**

The application in this case is for a writ to compel council to perform the mandatory duty enjoined upon it by the Constitution of Ohio to submit to the voters a certain proposed amendment to the charter of the city, a matter in which the people of the city at large are the real parties in interest.

The court holds that the relator is a proper party to bring this suit.

2. It is claimed that the relator is asking for specific relief, that is, that council submit the question to the voters on May 8, 1956, on which date a primary election is being held, and that since he is not entitled to such specific relief he is not entitled to any other relief.

It is clear from the statements in his petition that the relator desired that the question be submitted at such primary election; it is equally clear that his only purpose in requesting that date is because at all events there will be an election at that time and therefore the submission of this additional question then will be less expensive than if the question is submitted at some other special election. Neither the relator nor the court can compel council to fix a certain date. If a valid petition is filed by the required number of electors, the constitutional provision is that council must forthwith pass an ordinance submitting the question at an election to be called and held not less than sixty

and not more than one hundred and twenty days after the passage of the ordinance. The only power of the court is to order council to pass such an ordinance forthwith. It is the duty of council to fix the date of the election within the period required by the Constitution. The prayer of the relator also asks "for all other relief that is proper in such case, either at equity or law." The fundamental complaint of the petition filed in this case, based upon the facts therein set forth, is that a valid petition was submitted to council and that on March 7, 1956, council rejected that petition and failed to pass forthwith an ordinance submitting the amendment to the voters. If such facts are proved to be true they state a cause of action for a peremptory writ of mandamus and it is the duty of the court to order council to pass an ordinance forthwith calling for an election to be held not less than sixty and not more than one hundred and twenty days after the passage of the ordinance. The part petitions which were filed and addressed to the council of the city suggest no date for the election, but merely "that the undersigned electors of the City of Cincinnati, Ohio, hereby respectfully petition your Honorable Body to pass forthwith, in accordance with the requirement of **Article XVIII, Sections 8 and 9, of the Constitution of Ohio,** an ordinance * * *."

**The State, ex rel. Keyser, v. Babst, 101 Oh St 275.** In this case a petition in quo warranto was filed. The court at page 281 states: "This Court under the constitution has original jurisdiction in both quo warranto and mandamus, and the form of the prayer becomes immaterial, as the facts pleaded warrant relief by way of mandamus."

**State, ex rel. Masters, v. Beamer, et al., 109 Oh St 133, Syllabus 2:** "Mandamus does not lie to compel a board of education to perform any specific one of several optional duties imposed by statute, but mandamus does lie to compel a board of education to perform one or another of several optional duties."

The court holds that the case herein should not be dismissed solely because the relator has asked that the election be called and held on a specific date.

3. That the law requires that the affidavit of the solicitor of a part petition state, among other things, that the solicitor believes that the persons signing such petition are electors of the city of Cincinnati. In this respect, the affidavit in the form of pettion used in this case contains this language:

"The foregoing petition containing the signatures of ——————— electors."

It is contended that following the word "electors" should be the words "of the City of Cincinnati," and that said omission invalidates all part petitions and therefore the petition in its entirety. At the top of the petition, in large and very bold type, is the following language:

"Petition of electors of the City of Cincinnati, requesting Council * * *."

It is true that the requirements as to the contents of the petition, including the contents of the affidavit of the solicitor, must be complied with, but such requirements must not be so construed as to arbitrarily obstruct and defeat the purpose of such requirements, which is to pre-

vent the submission of such an amendment through the action of persons not entitled thereto and also to prevent fraud.

The State, ex rel. City of Middletown, v. The City Commission of the City of Middletown, 140 Oh St 368, 24 O. O. 297, Syllabus 1: "The provisions of the State Constitution authorizing and providing the manner of submission of municipal ordinances to a referendum vote should be so construed as to permit rather than preclude the exercise of the right conferred. The object clearly sought to be attained by such provision should be promoted rather than prevented or obstructed."

The application of the above rule on the point now being considered would clearly require that the word "electors" in the affidavit should be read in connection with and be modified by the words in the bold type at the beginning of the petition "Petition of electors of the City of Cincinnati." If the above parts of the form of the petition used in this case are read together and it is also taken into consideration that the precinct and ward of the signer must be given and is easily checked, the conclusion must be reached that adding the words "of the City of Cincinnati" after the word "electors" in the affidavit, would in no way furnish protection against fraudulent or otherwise legal faults in the petition. To invalidate the entire petition, containing more than 32,000 names, for this cause would be an unwarranted effort to prevent rather than promote the exercise of the constitutional right to initiate this amendment to the charter.

The court holds that this objection to the petitions addressed to council is untenable.

The foregoing questions were not raised at the council meeting on March 7, which rejected the petition. They were raised by the amended answer and the reply thereto.

A special committee of three members of council was appointed to examine and determine the validity of the names on the various part petitions. On March 7, 1956, the majority of said committee made its final report, in which it recommended the rejection of the petition in its entirety for various reasons. Also in the arguments preceding the adoption of the report, by five members of council, many reasons were given for adopting the report, such as that the voters should be advised that the question more properly should be submitted at a general election and also that many citizens will feel that council should have rejected the petition summarily, and without such painstaking examination, as a crass and dishonest political maneuver by unscrupulous men. In spite of such statements, the report clearly reveals that one or the other or both of the following two reasons, which were also made an issue by the amended answer and reply thereto, was the basis for the final action taken by a majority of council on March 7, 1956, which adopted the report of the majority of the special committee which recommended the rejection of the petition in its entirety as being invalid and not entitled to the passage forthwith of an ordinance submitting the proposed amendment to a vote of the electors.

4. One of said two reasons for rejecting the petition and failing forthwith to pass such an ordinance is that no copy of the petition was filed, before circulating the same for signatures, with the City Auditor in

compliance with §731.32 R. C., which reads as follows, and that such failure vitiates the petition in its entirety:

"Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a verified copy of the proposed ordinance or measure with the city auditor or the village clerk."

The basis of this contention is that where the Constitution is silent as to the procedures and requirements with reference to the initiation of a charter amendment the statutes of the State shall be applied, as decided in the case of State, ex rel. Poor, v. Addison, 132 Oh St 477, 8 O. O. 459, and also because Article II, Section 1 of the Charter of the City of Cincinnati provides that "the laws of the State of Ohio * * * shall have full force and effect * * *" and Section 3 provides "the initiative and referendum powers * * * shall be exercised in the manner provided by the laws of the State of Ohio." This is true if the particular statutes and the Ohio constitutional provisions involved are not in conflict.

It is clear that the above provision is only a part of the procedure, if the enactment of an ordinance is initiated by petition of the required number of electors, and that the further necessary steps for getting the question on the ballot are provided by the following sections of the Revised Code which read in part as follows:

Sec. 731.34 R. C. "After the petition has been filed with the city auditor or village clerk, it shall be kept open for public inspection for ten days."

Sec. 731.28 R. C. "When a petition is filed with the city auditor or village clerk, signed by the required number of electors proposing an ordinance or other measure, such auditor or clerk shall, after ten days, certify the petition to the board of elections. The board shall submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next succeeding general election, in any year, occurring subsequent to ninety days after the certifying of such initiative petition to the board of elections. * * *"

In the case of State, ex rel. Hinchliffe et, v. Gibbons et, 116 Oh St 190, it was held that a petition proposing an amendment to the charter of the city, under the provisions of the Constitution of Ohio, must be submitted to council and that it is the duty of council to determine its validity.

Under the statutory provisions, even in the case of an initiated ordinance, it is not clear what the auditor should do with said copy; presumably it should be sent with the completed petition to the Board of Elections. If a copy of the petition proposing an amendment to the charter of the city is filed with the auditor, there is nothing to indicate what the auditor is to do with it or how long he shall keep it. In such a case the auditor does not have any duty to perform with reference to determining the validity of the completed petition, which is filed with council, or with getting the question on the ballot. Filing such a copy in such a case seems to be a vain and futile thing with no purpose to be served.

The fact that a City Finance Director has been substituted for the City Auditor and City Treasurer makes no difference, if such a copy is

required to be filed with the auditor; the ordinary duties of the City Auditor have been transferred to the Finance Director. It was argued that since the completed petition is submitted to council, the filing of said copy with the Clerk of Council would satisfy the requirement. But there is a reason for providing that in the case of a village a copy should be filed with the village clerk; there is no auditor in the village; the statutes make the village clerk responsible for the usual duties of an auditor; the clerk of a village is an elected official; the clerk of council of a city is an appointed employee of council. **Secs. 733.11, 733.28 R. C.**

In an effort to find a purpose for filing a copy of the form of petition initiating an amendment to the charter, it was argued that it was intended to be available for public inspection, but the statute provides that it is the completed petition which is to be held ten days for public inspection and that it is the completed petition which, after ten days, is to be certified to the Board of Elections. All of the arguments on both sides concerning the necessity of filing said copy, prior to the circulation of the petition, and what has been said above, are based upon the language of §731.28 **R. C.**, as above quoted. However, the court has found that said language was changed by an amendment in **126 O. L. page 220**, effective January 1, 1956. The changed language removes much of the ambiguity.

The former language as above quoted reads: "Such auditor or clerk shall, after ten days, certify the petition (that is the completed petition) to the board of elections. The board shall submit" etc.

The new language is: "Such auditor or clerk shall, after ten days, certify the text of the proposed ordinance or measure to the board of elections. The auditor or clerk shall retain the petition. The board shall submit" etc.

If it is attempted to apply this new language to a proposed amendment to the charter, an irreconcilable inconsistency and conflict with the provisions of **Sections 8 and 9 of Article XVIII of the Constitution of Ohio** are encountered. According to said provisions of the Constitution the signed and completed petition, or part petitions, are sent to council; the auditor never sees them and has no duty to perform in regard to them. According to the statute, the signed and completed petition, or part petitions, are sent to the auditor or village clerk who must retain them. The city council never sees them and has no duty to perform in regard to them.

According to said provisions of the Constitution, if council determines that the petition is valid, it is mandatory that council forthwith pass an ordinance submitting the question to the electors at the next regular municipal election, if one shall occur not less than sixty days nor more than one hundred and twenty days after the passage of the ordinance; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid.

According to the statute, the text (presumably the copy) of the proposed ordinance or measure must be certified to the Board of Elections which must submit the question to the electors at the next general election occurring subsequent to ninety days thereafter. If said copy is

filed with the auditor, it is mandatory that the Board of Elections and not council submit the question.

Because of said inconsistency and conflict with the provisions of the Constitution, the court holds that a failure to comply with the requirement of §731.32 R. C., that a copy of the form of petition be filed with the City Auditor (or Finance Director) before the petition is circulated for signatures, does not invalidate the petition.

5. The other of the two reasons for rejecting the petition in its entirety and failing to pass an ordinance submitting the proposed amendment to the electors is that the petition did not contain the required number of valid signatures. Since there is no provision in the charter of the city or in **Article XVIII of the Constitution of Ohio** prescribing the method of ascertaining whether or not the petition contained the necessary valid ten per cent of signatures, the provisions of **§731.31 R. C.,** must be followed in making such a determination. Said section contains many provisions in regard to filling out the petition and said provisions are mandatory. The part which establishes the method of determining the number of valid signatures reads as follows:

"In determining the validity of any such petition, all signatures which are found to be irregular shall be rejected, but no petition shall be declared invalid in its entirety when one or more signatures are found to be invalid except when the number of valid signatures is found to be less than the total number required.

"The petitions and signatures upon such petitions shall be prima facie presumed to be in all respects sufficient."

To sustain the action of council in this case in rejecting the petition on the basis of its determination that it did not contain the required number of valid signatures, great reliance is placed on the decision in the case of **State, ex. Waltz, v. Michell, 124 Oh St 161,** decided June 17, 1931. There is no syllabus in the case and therefore we quote from page 164:

"It is quite clear that the duty and responsibility of determining the sufficiency of such petitions are conferred upon the city council, and that upon the finding of insufficiency of such petitions, the court will not issue a writ of mandamus requiring a submission of the proposed amendment to the electors, unless it clearly and affirmatively appears that the finding of council in that respect had resulted from fraud, corruption or a gross abuse of discretion."

Judge Jones wrote a scathing, dissenting opinion in which Judge Robinson joined. A few excerpts from the dissenting opinion give some idea of the nature of the criticism of the majority opinion and also of the method employed in determining that the petition in its entirety should be rejected.

Page 165: "In my judgment the method employed to defeat the initiative sounds the knell of the initiative and referendum. It is the most highhanded and arbitrary exercise of autocratic power that I have ever known."

Page 167: "He evidently assumed that if a few of the signers imposed upon the circulator this justified him in throwing all of the petitions into the discard."

The decision, if still the law, gives considerable support to the action

of council in the present case. This court gave much study to the majority and dissenting opinions in the above case, but was unable to understand why the majority opinion not only ignored but apparently repudiated the unambiguous formula prescribed by the above quoted part of §731.31 R. C., for determining whether the petition contained the necessary ten per cent of valid signatures. By searching the Session Laws, this court found that the legislature at its next session, following the date of the decision, amended the then existing provision by adding the following:

Laws of Ohio, Volume 115, Part 1, Page 214; approved April 14, 1933: "In determining the sufficiency of any such petition all signatures which are found to be irregular shall be rejected, but no petition shall be declared invalid in its entirety when one or more signatures are found to be invalid, except when the number of valid signatures shall be found to be less than the total number required." (Note: The word "sufficiency" was later changed to the word "validity.")

It is apparent that the above amendment was prompted by and resulted directly from the majority opinion in the above case and the criticism thereof by Judges Jones and Robinson. It clearly means that no signature can be rejected without a finding of its invalidity and a finding means that there must be some final determination, after examination, that the signature is infected with some plausible legal defect. And considered, as it must be, in connection with the sentence which immediately follows that, "The petitions and the signatures upon such petitions shall be prima facie presumed to be in all respects sufficient." The added provision certainly means that there can be no assumption that any signature not completely and finally examined is invalid. On the contrary, any signature which is not examined and rejected for some plausible legal defect must be presumed to be valid and counted as such. It certainly does not mean that only part of the signatures can be examined and then by deducting those actually found to be invalid from the number of those examined it can be concluded that the difference is all of the valid signatures. On the contrary, to ascertain the number of valid signatures, the number of signatures actually found to be invalid, after a complete and final examination. must be deducted from the total number of signatures on the entire petition; the signatures which, for any reason, have not been examined must be presumed to be valid and counted as such.

The question is presented whether council reached the conclusion that there were not the required number of valid signatures by following the mandatory formula provided in the statute. According to the statements in the final report which was adopted by council and the other evidence in the case there were a total of 777 part petitions filed containing 32,721 names. Mr. Gilligan, a member of the Special Examining Committee, finally admitted that at least 228 part petitions, containing approximately 9,000 signatures, were not completely examined and no specific finding made of the number of invalid signatures thereon. From said final report to council and from the testimony of the city clerk it appears that 516, or perhaps 540, part petitions containing approximately 22,000 names were examined, leaving at least 237 part

petitions, containing approximately 10,790 names that were not examined completely so as to make a finding as to invalid signatures thereon. In the main part of said final report upon which council based its action it was stated that there were 14,445 valid signatures on the 516 part petitions, or, as stated in the addenda to the final report, 15,415 valid signatures on 540 part petitions. These are the figures upon which council based its rejection of the petition in its entirety.

There can be no question but that the above number of valid signatures was determined by subtracting the number of signatures actually rejected, after an examination, from 22,000, the number of signatures which were examined. It is also clear that approximately 10,000 signatures were completely ignored or that all, or a certain percentage of them, were presumed to be invalid. The provision of §731.31 R. C., above quoted, requires that said 10,000 signatures should be presumed to be valid. It was admitted in the amended answer filed on behalf of council that the required number of valid signatures is 15,388. Even if it were permitted to be assumed, which it is not, that the same proportion of invalid signatures would be found on the part petitions not examined, that is, one out of every three, there would be at least 6,000 valid signatures which would have to be added to the 14,445. It is clear that if the statutory formula had been followed, there would have been found a great many more valid signatures than are required.

Although some question might be raised as to the correctness of some of the rejections which were made, for the purpose of this opinion the court is assuming that there was no abuse of discretion in making said rejections and that they were made after an unusually careful examination and were based upon some plausible legal defect.

It was stated in the report that all the signatures were not examined because of lack of time and that the minority in council were pressing for action on March 7th so that the amendment could be put on the ballot at the primary election on May 8th. This is no excuse for ignoring the 10,000 signatures which were not examined nor for failing to follow the formula prescribed by the statute. Council had a right to take a reasonable time to examine all the signatures. Neither a court nor anyone else could require council to come to a conclusion in less than a reasonable time, as to the number of valid signatures.

There is no sanction in law or in fact for the action of council in rejecting the petition in its entirety because of an insufficiency of the required number of valid signatures.

For the foregoing reasons the court holds that the initiated petition herein involved is valid and that a peremptory writ of mandamus should be and is hereby allowed, ordering council forthwith to pass an ordinance providing for the submission of the proposed amendment to the charter to a vote of the electors of the city at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission at a special election to be called and held not less than sixty nor more than one hundred and twenty days after the passage of such ordinance.

Please prepare an entry and peremptory writ of mandamus.