BOEHN et al., Appellees,

v.

SHURTLIFF et al., Appellants.

[Cite as *Boehn v. Shurtliff* (1993), 90 Ohio App.3d 363.]

Court of Appeals of Ohio,
Huron County.

No. H–93–8.

Decided Sept. 17, 1993.

*Holly Bishop* and *Ronald Freeman,* for appellees.

*Amy Shurtliff* and *Curtis Koch,* for appellants.

SHERCK, Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas, Juvenile Division, which awarded the custody of two children to the children's grandparents even though a Utah court had awarded such rights to the children's natural father. Because we find the trial court lacked subject matter jurisdiction to hear this matter, we reverse.

Appellants, Timothy T. Shurtliff ("Shurtliff") and Amy Shurtliff, n.k.a. Baker ("Baker"), were married at St. George, Utah, on February 18, 1984. Two children were born of this marriage. Appellees, Daniel L. Boehn and Candyce L. Boehn, are the parents of Baker and the maternal grandparents of appellants' children.

When, in February 1987, appellants separated because of marital discord, appellant Baker took the two infant children from Ogden, Utah, to her parents' home in Becker, Minnesota. Baker later returned to Utah for what proved to be an unsuccessful attempt at reconciliation. During this time, she left the children with appellees. In 1988, appellant Baker rejoined her children at appellees' Minnesota home. On September 29, 1988, appellant Shurtliff filed a divorce complaint against appellant Baker in Weber County, Utah. In October 1988, appellees, along with appellant Baker and the children, moved from Minnesota to Norton, Ohio.

The course of the Utah divorce proceedings is undisputed. Although appellant Baker did not physically appear in the Utah court, she entered in writing a

stipulation, appearance and waiver consenting to an entry of divorce by default. The final decree of divorce between appellants was entered in the Second Judicial Court of Utah on May 14, 1990. The decree awarded custody of the children to Baker and ordered Shurtliff to pay $144.60 per month child support.

Appellant Baker later filed an affidavit in the Utah court. In this affidavit, she stated that during the time that she and her children lived with her parents, her parents attempted to dominate her. According to Baker, when she moved to an apartment away from her parents' house, they coerced her into leaving the children behind. Between January and June 1990, according to Baker, her parents on occasion even refused to allow her to see the children. In June 1990, when appellant Baker sought to move to Nevada, her parents would not permit the children to accompany her. Appellant Baker also asserts that her parents intercepted her final divorce documents and failed to inform her that the decree had been awarded. According to appellant Baker, shortly after she moved to Nevada she discovered that her parents had moved from Norton, Ohio, to an undisclosed location and had their telephone disconnected.

Appellant Shurtliff, for his part, complains that in February 1987, without informing him, Baker went with the children to Ohio with her parents, appellees herein. During the next two years he was permitted only limited telephone contact with the children. According to Shurtliff, in 1989 appellees began to further restrict telephone contact and refused his requests for visitation. After June 1990, appellant Shurtliff stated that there were no more contacts from the children, and he discovered that appellees' telephone had been disconnected.

During the next two years, according to Shurtliff, he tried to find his children and his former wife, Baker, whom he still believed had the children. Appellant Shurtliff recounts a long list of efforts he made, including calls to appellees' minister and relatives, as well as inquiries he made through local police, the IRS, and the FBI. Shurtliff maintains that he even employed a private detective to find the children. He also filed a criminal complaint in Utah against appellant Baker for interference with custody. This last act resulted in Baker's arrest in Las Vegas some months later. It was at that point that Shurtliff first discovered that Baker was not with the children and, in fact, did not know the exact whereabouts of her parents or the children. Information was later developed that appellees were living in New London, Ohio, in Huron County. They had, however, retained a post office box in Talmadge, Ohio, near Akron. Appellees had an unlisted telephone number and had enrolled appellants' children in a private, religious school.

In July 1992, appellant Shurtliff, with the consent of appellant Baker, filed a petition in Weber County, Utah, seeking modification of the divorce decree. Shurtliff sought the permanent care and custody of appellants' children. A copy

of this petition was served on appellees by the Huron County Sheriff. On August 26, 1992, appellees filed in the Huron County Court of Common Pleas, Juvenile Division, their complaint for custody of the children, which underlies this appeal.

Although the record reveals that there was communication between the Utah court and the Ohio trial court, the two actions continued in parallel. On September 21, 1992, the Utah court refused to decline jurisdiction and ordered appellees to appear in that matter if they wished to contest appellant Shurtliff's petition for custody. On September 28, 1992, the Utah court entered an order transferring custody to appellant Shurtliff.

In Ohio, the trial court elected to hear a motion to dismiss for lack of subject matter jurisdiction filed by appellants at the same time it heard appellees' petition for custody on the merits. On November 2, 1992, a hearing was held in the trial court on both the motion and the merits of the case. On November 23, 1992, the trial court issued a judgment which denied appellants' motion to dismiss and granted appellees custody of appellants' children. Appellants appealed from both this order and a subsequent collateral order setting an amount of child support. Appellants raise four assignments of error:

"I. The Common Pleas Court of Huron County, Ohio, Juvenile Division, lacks jurisdiction to make a determination of custody in the matter because jurisdiction is already being exercised by the Second Judicial District Court, County of Weber, State of Utah.

"II. The Common Pleas Court of Huron County, Ohio, Juvenile Division, should not have exercised its jurisdiction in this matter because the appellees had improperly retained a child after a visit or other temporary relinquishment of physical custody.

"III. The judgment of the Common Pleas Court of Huron County, Ohio, Juvenile Division is contrary to law and against the weight of the evidence.

"IV. The actions of the Common Pleas Court of Huron County, Ohio, Juvenile Division, violate Article 4, Section 1 of the United States Constitution."

The threshold question before us is whether the trial court had subject matter jurisdiction. Both Ohio and Utah have enacted, in substantially the same form, the Uniform Child Custody Jurisdiction Act ("UCCJA").[1]

"The purpose of the UCCJA is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child. * * * " *State ex*

---

1. R.C. 3109.21 to 3109.37 and Utah Code Ann. 78–45c–1 to 78–45c–26, respectively.

*rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 349, 544 N.E.2d 657, 660, citing Annotation (1979), 96 A.L.R.3d 968, 973.

Under prior law, "[c]hild custody could be awarded or modified in any state where the child was physically present, whether or not another state's custody decree had been violated or proceedings were pending * * * in the child's home state * * *." Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA (1981), 14 Fam.L.Q. 203. The UCCJA (1) eliminates jurisdiction based on the physical presence of the child; (2) with few exceptions, prohibits modification of custody decrees of other states; and (3) requires summary enforcement of out-of-state decrees. *Id.* at 204, citing UCCJA, Section 3(b) (R.C. 3109.22[B] ), UCCJA, Section 14 (R.C. 3109.31), and UCCJA, Sections 13, 15 (R.C. 3109.30[B], R.C. 3109.32).

The UCCJA distinguishes two types of jurisdiction. UCCJA, Section 3 (R.C. 3109.22) in conjunction with Sections 6 (R.C. 3109.24), 7 (R.C. 3109.25) and 8(a) (R.C. 3109.26) governs initial jurisdiction. Bodenheimer, *supra,* at 215–216. Once an initial custody decree has been rendered by one state, however, jurisdiction for modification of that decree may be obtained only by satisfying UCCJA, Section 14, herein enacted as R.C. 3109.31. *Id.* That statute provides:

"(A) If a court of another state has made a parenting decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court that rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code, or has declined to assume jurisdiction to modify the decree, and the court of this state has jurisdiction. * * * "

The commissioners note to UCCJA, Section 14 (R.C. 3109.31) explains that courts that render a custody decree normally retain continuing jurisdiction under the law. This, indeed, is the well-established rule of law in Ohio, *Loetz v. Loetz* (1980), 63 Ohio St.2d 1, 2, 17 O.O.3d 1, 1, 406 N.E.2d 1093, 1093; *Van Divort v. Van Divort* (1956), 165 Ohio St. 141, 59 O.O. 207, 134 N.E.2d 715, at paragraph one of the syllabus; *Hoffman v. Hoffman* (1864), 15 Ohio St. 427. The UCCJA acts to statutorily ensure the same type of recognition of interstate continuing custody jurisdiction as is afforded intrastate continuing custody jurisdiction. 9 Uniform Laws Annotated (1988) 292. The UCCJA vests exclusive continuing jurisdiction for "as long as a parent or a child continues to reside in the state rendering the original decree * * *." Annotation, Continuing Jurisdiction (1991), 83 A.L.R.4th 742, 748–749; accord Bodenheimer, *supra,* at 214; 9 Uniform Laws Annotated, *supra; State ex rel. Aycock v. Mowrey, supra,* 45 Ohio St.3d at 351–352, 544 N.E.2d at 661–663.

In the present case, the initial jurisdiction of the Utah domestic relations court is uncontested.[2] Because the Utah jurisdictional prerequisites are substantially the same as the Ohio version of the UCCJA and it is undisputed that appellant Shurtliff is now, and at all times since the initial Utah decree has been, a resident of the state of Utah, that state has continuing jurisdiction over the custody of the children. Compare *State ex rel. Aycock v. Mowrey, supra.* Since Utah retains continuing jurisdiction over the custody of the children, R.C. 3109.31 (UCCJA, Section 14) mandates that an Ohio court "shall not modify that decree unless [the Utah court] * * * has declined to assume jurisdiction to modify the decree * * *."

Here, the trial court was presented with a properly certified and authenticated judgment wherein the Utah court not only assumed continuing jurisdiction to modify the decree, but, in fact, after affording appellees an opportunity to be heard, did modify the decree by granting custody of the children to appellant Shurtliff. Accordingly, the trial court was without any jurisdiction to modify the Utah custody order. Appellants' first assignment of error, therefore, is found well taken.

At oral argument, appellants withdrew their fourth assignment of error. Appellants' second and third assignments of error are found moot.[3]

On consideration whereof, substantial justice has not been done the party complaining. The judgment of the Huron County Court of Common Pleas is reversed. Costs assessed to appellees.

*Judgment reversed.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.

---

2. Accordingly, we need not reach the issue of whether appellees have standing to retroactively challenge the jurisdiction of that court or whether an Ohio common pleas court may overrule the judgment of a court of another sovereign state as to its own jurisdiction.

3. We decline to consider whether appellants may be entitled to any sanction pursuant to R.C. 3109.32(B) or whether further remedy may be available through The Parental Kidnapping Prevention Act, Section 1738A(d), Title 28, U.S. Code.