OPINION
Diane Zwissler appeals the trial court's denial of her motion to dismiss in which she argued that the trial court should have declined to exercise jurisdiction over Charles Zwissler's motion for change of custody. Having found that the trial court had continuing jurisdiction over matters pertaining to the parties' child under Ohio law and pursuant to the parties' divorce decree, we affirm the trial court's exercise of jurisdiction over Charles' motion for change of custody.
 I.
Diane and Charles were divorced on January 30, 1985, by a final judgment and decree of divorce in the Montgomery County Common Pleas Court. Pursuant to the divorce decree, the trial court awarded custody of the parties' child, Amy, born on May 31, 1982, to Diane and granted visitation to Charles. Furthermore, the court explicitly retained continuing jurisdiction in the divorce decree over all matters of child custody, support, and visitation.
Both parties and their minor child continued to reside in Ohio until November 22, 1992, when Diane and Amy moved to Texas. In the over four years since that date, Amy has continued to reside with Diane in Texas, but has been present in Ohio for periods of visitation with her father. Before Diane and Amy moved to Texas, the parties agreed that Charles would have seven weeks of visitation with Amy in Ohio during her summer vacation and that Charles would have visitation with Amy in Ohio during her Christmas and spring breaks.
Since their divorce, Charles has continued to reside in Montgomery county, Ohio. Both sets of the child's grandparents reside in Ohio as well as all of the child's other close relatives. Both sets of grandparents were likewise entitled to one week of visitation with Amy every year, and Amy's other close relatives were also entitled to annual visits with Amy in Ohio.
Since the parties' divorce, both parties have on several occasions used the Montgomery county domestic relations court to determine issues of child custody and support. In fact, Charles has even invoked the jurisdiction of that court since Diane and Amy moved to Texas to determine child custody and support issues. Concomitantly, Diane submitted to the jurisdiction of the court. Significantly, Diane agreed to the court's jurisdiction to determine matters involving Amy as recently as eight months prior to Charles instituting the action underlying this appeal.
On July 29, 1996, Charles moved the court for a change in custody, to modify child support, and to receive temporary custody. Charles also requested that the court find Diane in contempt of the court's orders. The grounds for Charles' motions were that Diane continually denied his visitation with Amy, failed to provide for transportation costs as ordered by the court, failed to provide telephone contact Amy, and failed to provide him with Amy's vacation and school event schedules. Charles also alleged that he was supposed to receive a one month visitation with Amy and that, after only one week, Diane kidnaped Amy and returned to Texas.
After receiving copies of Charles' motions, Diane moved a Texas court to assume jurisdiction over the matter. The Texas court granted Diane's motion on September 18, 1996, without ever contacting the Ohio court in which this matter was pending as required by Ohio's and Texas' UCCJA statutes to determine which court has jurisdiction and which forum is more appropriate. On November 26, 1996, Diane moved the Montgomery County domestic relations court to dismiss the action on jurisdictional grounds. The magistrate overruled Diane's motion on December 3, 1996. Thereafter, Diane filed objections to the magistrate's order. On March 3, 1997, the trial court overruled Diane's objections and adopted the magistrate's decision. Furthermore, the court granted Charles' motion for change of custody. Diane now brings this timely appeal from the trial court's denial of her motion to dismiss and decision to exercise jurisdiction.
 II.
In her sole assignment of error, Diane argues that:
 THE TRIAL COURT IN OVERRULING PLAINTIFF/APPELLANT'S MOTION TO DISMISS COMMITTED AN ERROR AS A MATTER OF LAW IN FAILING TO DECLINE JURISDICTION AS TO CUSTODY ISSUES BECAUSE TEXAS IS A MORE APPROPRIATE FORUM FOR SUCH PURSUANT TO REVISED CODE SECTION 3109.21 TO 3109.33.
Under this assignment of error, Diane argues that the Uniform Child Custody Jurisdictional Act requires that before an Ohio court may exercise its continuing jurisdiction over child custody matters, the court must find one of the following factors: 1) that Ohio is the home state of the child; 2) that the child and at least one parent have significant contacts with Ohio; 3) that the child is physically present in Ohio and either the child has been abandoned or the child has been subjected to or threatened with mistreatment; or 3) that it appears that no other state would have jurisdiction. R.C. 3109.22. Diane argues that for a court to exercise its continuing jurisdiction over a child custody matter, the court must make a finding that the facts of the case before it satisfy one of those requirements.
Diane further argues that, in the present case, the court improperly determined that the facts of this case satisfy the second requirement, that is, that the parties' child and one contestant have significant contacts with Ohio. More specifically, Diane argues that the trial court erred in finding jurisdiction on the basis that Amy and Charles have significant contacts with Ohio. Diane explains that Amy and she have not had significant contacts with the State of Ohio for several years. Diane elaborates that Amy and she have resided in Texas for more than four years and that Amy only has been in Ohio during that time for periods of visitation with her father and other relatives. Diane further explains that Amy's most recent school, health, and therapy records are present in Texas. She also argues that Amy's strongest and most current friends and contacts are in Texas.
Relying upon these contentions, Diane argues that their daughter does not have significant contacts with Ohio. Diane contends that, as a consequence, Ohio does not have continuing jurisdiction over issues of their daughter's custody. Assuming this is true, Diane argues that the trial court erred in overruling her motion to dismiss and in finding that it had jurisdiction to decide Charles' motion for a change in custody.
We disagree with Diane's contentions. The National Conference of Commissioners on Uniform Laws drafted the Uniform Child Custody Jurisdiction Act ("UCCJA") as a model act to be adopted by all states to, among other reasons, avoid jurisdictional conflict among the states on child custody matters. 9 Uniform Laws Annotated 116-118. A number of states, however, adopted differing versions of the Act or gave differing interpretations to the Act. Holm v. Smilowitz (1992), 83 Ohio App.3d 757,768. This in turn led to the rise of instances of concurrent jurisdiction and further engendered state conflict as well as forum shopping. Id.
In response to this problem, Congress passed a Federal version of the Uniform Child Custody Jurisdiction Act which is commonly known as the Federal Parental Kidnaping Prevention Act ("PKPA"). Id. With its enactment, Congress intended to resolve the problems that arose with states adopting differing versions of the UCCJA or differing interpretations of the UCCJA. Id. To the extent that a state's UCCJA sets forth different jurisdictional factors from those set forth under the PKPA, the PKPA preempts the state's UCCJA law. Blazek v. Blazek (1983), 462 N.Y.S.2d 557. By preempting state laws that conflict with the PKPA as to the factors that are necessary for a state to exercise jurisdiction, the PKPA "establishes national standards under which * * * courts * * * will determine their jurisdiction to decide [child custody] * * * disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions." Statutory Note (b) to 28 U.S.C.A. § 1738A.
The PKPA provides that one basis for a state's jurisdiction over a child custody matter is through a state court's continuing jurisdiction. 28 U.S.C.A. § 1738A (c)(2)(E). More specifically, the PKPA protects a state court's continuing jurisdiction when: 1) the court has made the original child custody determination, 2) the original decree was consistent with the provisions of the PKPA, 3) the court has jurisdiction under the laws of the state, and 4) the state remains the residence of the child or of any contestant. 28 U.S.C.A. § 1738A (d). If the state court meets this test, the PKPA provides that the court's continuing jurisdiction is exclusive for as long as a parent or child continue to reside in the state. Annotation, CHILD CUSTODY: WHEN DOES STATE THAT ISSUED PREVIOUS CUSTODY DETERMINATION HAVE CONTINUING JURISDICTION UNDER UNIFORM CHILD CUSTODY JURISDICTION ACT (UCCJA) OR PARENTAL KIDNAPING PREVENTION ACT (PKPA),28 U.S.C.S § 1738A, 83 ALR 4th 742, 748, (stating that "The PKPA anchors exclusive continuing jurisdiction to modify a previous custody decree in the original home state as long as the child or one of the contestants remains in that state).
Although the court's continuing jurisdiction is protected by the PKPA when the above test is satisfied, a state court may sua sponte decline to exercise its jurisdiction or a party may request that a court decline to exercise its jurisdiction on the basis that the forum is now inconvenient under the state's UCCJA law.Brown v. Brown (Conn. 1985), 486 A.2d 1116. Thus, even when a state has jurisdiction over a child custody matter according to the PKPA, the state may decline to exercise its jurisdiction on the basis that another state is the more appropriate forum.Stevenson v. Stevenson (Ala.Civ.App. 1984), 452 So.2d 869.
The portion of the PKPA regarding a court's continuing jurisdiction, in essence, statutorily ensures the same type of recognition that is afforded to intrastate continuing custody jurisdiction to interstate continuing custody jurisdiction. Boehnv. Shurtliff (1993), 90 Ohio App.3d 363, 367. The purpose of this PKPA provision is to protect the right of the state that issued the original child custody determination to exercise its continuing jurisdiction and in doing so discourage forum shopping as well as excessive relitigation of child custody matters. See,Mark L. v. Jennifer S. (1986), 506 N.Y.S.2d 1020.
In interpreting Ohio's UCCJA law consistently with the PKPA in the present case, we find that the trial court has continuing jurisdiction over issues regarding the custody of the parties' minor child. We find this to be the case because the Ohio court in question entered the original custody determination in this case consistent with the PKPA. Furthermore, the Ohio court had continuing jurisdiction under the laws of the State. More specifically, it is well-settled under Ohio law that courts which render an original custody decree have continuing jurisdiction over matters regarding the child's custody. Loetz v. Loetz
(1980), 63 Ohio St.2d 1, 2. Finally, as to the last requirement under the PKPA, one of the contestants, Charles, still resides in Ohio.
In holding in this manner, we find that the Ohio's UCCJA jurisdictional factors under R.C. 3109.22 only apply to original custody determinations. To determine whether an Ohio court's continuing jurisdiction is protected in subsequent modification proceedings, courts must consider the above-listed factors under the PKPA. If those factors are satisfied, then court may on its own motion or motion of one of the parties determine whether Ohio has become an inconvenient forum since the court's original custody determination under Ohio's UCCJA law on inconvenient forums found in R.C. 3109.25.
In this case, Diane did request that trial court decline to exercise its jurisdiction on the basis that Ohio is an inconvenient forum under the appropriate factors set forth in R.C.3109.25. R.C. 3109.25 provides, in pertinent part, that:
 (C) In determining if it [Ohio] is an inconvenient forum, the court shall consider if it is in the interests of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:
 (1) If another state is or recently was the child's home state;
 (2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
 (3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
 (4) If the parties have agreed on another forum that is no less appropriate.
R.C. 3109.25.
Diane argues that Texas is the more appropriate forum because Texas is their child's home state. She further argues that Texas is a more convenient forum because, according to Diane, Texas has a closer connection with Amy and herself. Finally, Diane argues that Texas has substantial evidence concerning the child's present or future care, protection, training, and personal relationships.
After reviewing the record, we find that the trial court correctly determined that Ohio was the appropriate forum to hear this matter. Since Diane and Amy moved to Texas, Ohio's jurisdiction over matters involving Amy has been invoked on many occasions. In fact, Charles has even invoked the jurisdiction of that court since Diane and Amy moved to Texas to determine child custody and support issues. Concomitantly, Diane has submitted to the jurisdiction of the court since her move to Texas. Most significantly, Diane agreed to the court's jurisdiction to determine matters involving Amy as recently as eight months prior to Charles instituting the action underlying this appeal. In addition, Charles has remained a resident of Ohio and has substantial visitation rights with Amy. In particular, Charles is entitled to have visitation with Amy in Ohio for seven weeks during the summer as well as the duration of her Christmas and Spring breaks. Furthermore, Charles has consistently exercised or attempted to exercise his visitation rights, but Diane has on several instances interfered with those rights, which is why Charles instituted the present action.
Both sets of Amy's grandparents also live in Ohio, and Amy's grandparents are entitled to one week of visitation with Amy in Ohio. Similarly, all of Amy's other close relatives continue to reside in Ohio. Moreover, several of those relatives are also entitled to visitation with Amy in Ohio.
In addition to having significant visitation in Ohio, Amy, who is now around sixteen years old, has expressed a desire to live with her father in Ohio. Magistrate's Decision and Interim Order of December 3, 1996; Magistrate's findings of fact in its Decision and Interim Order of January 3, 1997, adopted by the trial court in its Decision and Judgment overruling Diane's objections, dated March 3, 1997. And all of the evidence regarding her father's fitness to become the residential parent is in Ohio. Likewise, all of the information regarding the future care, protection, and personal relationships she would have in Ohio are obviously in Ohio. In view of these facts, we cannot find that the trial court abused its discretion in finding that Ohio was the appropriate forum to determine the custody of Amy. Based upon the foregoing, the assignment of error is overruled and the judgment of the trial court is affirmed.
WOLFF, J. and GRADY, J., concur.
Copies mailed to:
Paul W. Barrett
Kent J. Depoorter
Thomas A. White III
Hon. V. Michael Brigner