THE STATE, EX REL. AYCOCK, *v.* MOWREY, JUDGE.

[Cite as State, ex rel. Aycock, *v.* Mowrey (1989), 45 Ohio St. 3d 347.]

(No. 89-534—Submitted June 28, 1989—Decided September 27, 1989.)

*Frederick Meister,* for relator.

*Richard G. Ward,* prosecuting attorney, for respondent.

*Per Curiam.* Civ. R. 56 provides the standard for summary judgment motions. It states, in part:

"(C) * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be granted unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion

and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor. * * *"

For a writ of prohibition to issue, a relator must establish (1) that the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State, ex rel. Tollis,* v. *Court of Appeals* (1988), 40 Ohio St. 3d 145, 147, 532 N.E. 2d 727, 729. For a writ of mandamus to issue, a relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the requested act, and (3) that there is the absence of a plain and adequate remedy in the ordinary course of law. *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 6 OBR 50, 451 N.E. 2d 225. Thus, for Judge Mowrey to be entitled to summary judgment, this court must find, after construing any material factual disputes in Aycock's favor, that she cannot establish any element of either of these standards.

For the following reasons, we find the assumption of jurisdiction in the Robison custody suit to be within Judge Mowrey's discretion and, therefore, that he is not completely without jurisdiction to hear it. Moreover, because Judge Mowrey has discretion to hear the case, he has no clear duty to transfer it to the South Carolina court or to return Greg Jr. to his mother. As these findings require the conclusion that neither the prohibition standard nor the mandamus standard can be satisfied, we are compelled to grant the motion for summary judgment.

With respect to prohibition, the issue before us is whether. Judge Mowrey has any authority pursuant to Ohio's adoption of the Uniform Child Custody Jurisdiction Act ("UCCJA"), R.C. 3109.21 to 3109.37, to consider the action to modify the custody order of the South Carolina court. Because it is relevant to several of these statutes, we note that South Carolina has enacted reciprocal provisions of the Act, Section 20-7-782 *et seq.,* Code of Laws of South Carolina (1976).

The purpose of the UCCJA is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child. Annotation, Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act (1979), 96 A.L.R. 3d 968, 973. In effect, the Act generally limits interstate interference in custody proceedings. There are exceptions to this rule, however, and some of them are found in R.C. 3109.22(A)(1) through (4).

R.C. 3109.22(A)(1) permits an Ohio court to assume jurisdiction to determine custody when Ohio is the child's home state (basically, the state where the child lived with both parents, one parent, or a person acting as a parent for the six-month period immediately before the time involved, R.C. 3109.21[E]) at the commencement of the proceeding or Ohio was the child's home state within six months prior thereto before someone removed or retained him. R.C. 3109.22(A)(2) permits an Ohio court to assume jurisdiction to determine custody when it is in the best interest of the child because the child and at least one contestant (a person claiming custody or visitation rights with respect to the child, R.C. 3109.21[A]) have a significant connection with Ohio, and there is

available in Ohio "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." R.C. 3109.22 (A)(3) permits an Ohio court to assume jurisdiction to determine custody when the child has been abandoned in this state or mistreated. Finally, R.C. 3109.22(A)(4) permits an Ohio court to assume jurisdiction to determine custody when:

"It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

R.C. 3109.22(A)(1) through (4) apply to an Ohio court's assumption of jurisdiction to decide custody in the first instance. However, they also apply when an Ohio court is assuming jurisdiction to change or modify another state's custody decree by operation of R.C. 3109.31(A), which provides:

"If a court of another state has made a custody decree, a court of this state shall not modify that decree, unless it appears to the court of this state that the court that rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code, or has declined to modify the decree, and the court of this state has jurisdiction."

Judge Mowrey concedes that he does not have jurisdiction under R.C. 3109.22(A)(1) by virtue of Ohio being Greg Jr.'s home state. Likewise, he acknowledges that he does not have jurisdiction due to Greg Jr.'s being abandoned or mistreated as provided in R.C. 3109.22(A)(3). Rather, Judge Mowrey claims jurisdiction because South Carolina is also not Greg Jr.'s home state since Greg Jr. lived there with his maternal grandparents, and they do not qualify as persons "acting as parents" under the definition in R.C. 3109.21(I) (*i.e.*, although Greg Jr.'s maternal grandparents had physical custody, they had not been awarded custody and were not claiming a right to it). Observing that neither Greg Jr. nor his mother lives in South Carolina any longer, Judge Mowrey further argues that only Ohio has a significant connection with Greg Jr. and a contestant for his custody. R.C. 3109.22 (A)(2). Thus, he concludes that no other state had jurisdiction under prerequisites substantially in accordance with R.C. 3109.22(A)(1) to (3) and, therefore, that he was permitted under R.C. 3109.22(A)(4) and 3109.31(A) to decide whether Greg Jr.'s best interests were served by exercising jurisdiction. Moreover, Judge Mowrey maintains that R.C. 3109.24 (A) did not prevent him from assuming jurisdiction because no custody proceeding (*i.e.*, a divorce, separation, neglect, or dependency action, R.C. 3109.21[C]), was pending in South Carolina when Robison's complaint was filed.

In response, Aycock contends that South Carolina is Greg Jr.'s home state because he lived there with her for several years prior to Robison's action in Ross County. She also contends that all significant state connections, Greg Jr.'s friends, school, church, maternal grandparents, and his older brother, are in South Carolina, as is the evidence concerning Greg Jr.'s present care. Aycock contends further that at all times relevant herein she was a citizen and resident of South Carolina. According to her, these fac-

tors support the conclusion that South Carolina had jurisdiction under statutory prerequisites similar to R.C. 3109.22(A)(1) and (2). In addition, Aycock submits that the South Carolina court had continuing jurisdiction over matters connected with the original custody decree, and cites that court's contempt finding as an example.

Beyond this, Aycock cites R.C. 3109.26 to establish that the UCCJA does not condone the removal or retention of a child in violation of a valid custody decree. R.C. 3109.26 provides, in part:

"(B) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction, if this is just and proper under the circumstances."

Both arguments are persuasive. We agree that the child custody jurisdictional statutes should not be applied to allow retention or removal of a child in violation of a valid custody order. However, where, as here, the relator does not dispute that she will ultimately be entitled to appeal, the test for granting a writ of prohibition is whether there is a patent and unambiguous restriction on the jurisdiction of an inferior court or a complete and total want of jurisdiction which clearly places the pertinent controversy outside the court's jurisdiction. *State, ex rel. Smith,* v. *Court* (1982), 70 Ohio St. 2d 213, 215-216, 24 O.O. 3d 320, 321,

436 N.E. 2d 1005, 1007. See, also, *State, ex rel. Adams,* v. *Gusweiler* (1972), 30 Ohio St. 2d 326, 329, 59 O.O. 2d 387, 388-389, 285 N.E. 2d 22, 24; *State, ex rel. Safeco, Inc.,* v. *Kornowski* (1974), 40 Ohio St. 2d 20, 22, 69 O.O. 2d 90, 91, 317 N.E. 2d 920, 921; *State, ex rel. Gilla,* v. *Fellerhoff* (1975), 44 Ohio St. 2d 86, 87-88, 73 O.O. 2d 328, 329, 338 N.E. 2d 522, 523. Thus, in this case, we do not inquire whether Judge Mowrey properly assumed jurisdiction in the Robison custody suit; that issue is for an appellate court to decide. See, *e.g., In re Dissolution of Watson* (1983), 13 Ohio App. 3d 344, 347-348, 13 OBR 424, 427-428, 469 N.E. 2d 876, 880-881. Instead, our review must be limited to whether Judge Mowrey had the power to assume jurisdiction at all.

We find this power to exist in the considerable discretion afforded courts in deciding whether to consider an action to modify another state's custody decree under Ohio's UCCJA statutes. For example, R.C. 3109.22(A)(4), as it relates to this case, permits the assumption of jurisdiction if it *appears* that no other state is the child's home state or that no other state has a significant connection with the child, and it is in the child's best interest. Likewise, while R.C. 3109.31(A) prohibits an Ohio court from modifying another state's custody decree, the statute allows this if it *appears* to the Ohio court that the decreeing court does not now have jurisdiction under the Act.

There was evidence before Judge Mowrey from which these determinations could have been made, thereby allowing him to hear the Robison case even though South Carolina had not declined jurisdiction. Indeed, as there is an indication that none of the participants in the Robison case still lives in South Carolina, Judge Mowrey could have determined that South Carolina's

interstate jurisdiction under the UCC-JA had ended. Such a decision is not without support from other jurisdictions. See, *e.g., Sinclair* v. *Albrecht* (App. 1985), 287 S.C. 20, 336 S.E. 2d 485 (Even if the decreeing state has continuing jurisdiction under local law, it loses jurisdiction under the UCCJA if the parties have moved away, and another state's court may then assume jurisdiction to modify the custody decree.); *Brown* v. *Brown* (Ala. Civ. App. 1985), 476 So. 2d 114 (In interstate child custody matters, the continuing jurisdiction to modify an original custody judgment is lost when the child and both parents have removed themselves from the state where the judgment was entered.); *Bergh* v. *Bergh* (Minn. App. 1986), 387 N.W. 2d 213 (A state can lose jurisdiction to modify child custody where the parties no longer have a significant connection with the decreeing state.); *Beier* v. *Beier* (Minn. App. 1985), 371 N.W. 2d 52 (Decreeing state would have primary jurisdiction to hear action to modify custody order if mother had remained there, but where neither parent lived in decreeing state, it would not have jurisdiction at the time of a subsequent custody proceeding.). See, also, *Long* v. *Long* (N.D. 1989), 439 N.W. 2d 523.

Moreover, while clearly disfavoring child snatching and forum shopping, even R.C. 3109.26 allows an Ohio court to consider a change of custody action in that situation when it is in the child's best interest. Thus, in a similar case, *Commonwealth, ex rel. Taylor,* v. *Taylor* (1984), 332 Pa. Super. 67, 480 A. 2d 1188, a foreign jurisdiction's temporary custody order in a suit to modify a custody decree was found proper under the UCCJA, even though the father had kept the children beyond a visitation period.

Because none of the statutes cited obviously prohibits the assumption of jurisdiction in the custody suit pending before Judge Mowrey, we cannot find that he has no jurisdiction whatsoever to proceed. When a court has at least basic statutory jurisdiction to act and an appeal in the ordinary course of law is available, a writ of prohibition will not lie. *State, ex rel. Adams,* v. *Gusweiler, supra,* at 329, 59 O.O. 2d at 389, 285 N.E. 2d at 24. Accordingly, we deny the writ of prohibition sought by relator and grant Judge Mowrey's motion for summary judgment.

Having found that it was within Judge Mowrey's discretion to assume jurisdiction in the Robison custody dispute, we must also find that he has no clear duty to transfer that matter to South Carolina or to return Greg Jr. to Aycock. To hold otherwise would require a finding that Judge Mowrey abused his discretion in this regard, and that issue is not a proper subject of our review in this case. R.C. 2731.03 prohibits us from using mandamus to control judicial discretion. Accordingly, we must deny the requested writ of mandamus by also granting summary judgment on that basis.[1]

---

[1] By the same token, a finding that the South Carolina family court had no authority to enforce the 1984 custody decree should not be implied from our result. We have acknowledged the possibility that the family court no longer has jurisdiction to modify that order. However, a court retains the inherent power to enforce its own custody decree through modification thereof. *Taylor, supra,* at 73-75, 480 A. 2d at 1190-1192. Accord *Kirylik* v. *Kirylik* (1987), 292 S.C. 475, 476-477, 357 S.E. 2d 449, 450. Because our decision does not reach whether Judge Mowrey properly, and thus validly, assumed jurisdiction over the Robison custody dispute, we make no ruling as to the family court's continuing jurisdiction in this regard.

*Writs denied.*

MOYER, C.J., SWEENEY, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., dissents.

DOUGLAS, J., dissents with opinion.

DOUGLAS, J., dissenting. I must respectfully dissent. I do so because I view the majority decision with some alarm. The practical problems presented by the fact pattern of this case are not unusual and very often are the bane of domestic relations judges and practicing attorneys all across our state. I fear the majority opinion will cause further uncertainty and turmoil—exactly what adoption of the Uniform Child Custody Jurisdiction Act ("UCCJA") was designed to prevent.

Certain facts in this case are clear and undisputed. Both Ohio and South Carolina have adopted the UCCJA. The divorce of Donna W. Robison Aycock and Greg F. Robison took place in South Carolina. Donna was granted custody of their child, Greg Jr., and Greg Sr. was granted visitation with Greg Jr. for a period of one week each Christmas. At the conclusion of the Christmas 1988 visitation, Greg Sr., exercising self-help and without intervention of any court, took it upon himself to refuse to return Greg Jr. Greg Sr. then brought an action in the Court of Common Pleas of Ross County in which he sought to modify the *South Carolina* custody order. Since Greg Sr. continued to refuse to return Greg Jr. to Donna, Donna sought an order from the South Carolina family court requiring Greg Sr. to appear and show cause why he should not be held in contempt for ignoring the South Carolina divorce decree. The South Carolina court issued a show cause order and Greg Sr. was served. Greg Sr. ignored the show cause order and did not appear. The South Carolina family court judge found Greg Sr. in contempt not only for failure to return Greg Jr., but also for failure to comply with the child support and insurance requirements of the original court decree.

In addition, it is uncontroverted that Greg Jr. had lived in South Carolina for at least several years before the filing of these actions and the unilateral action of Greg Sr. Greg Jr.'s records regarding medical care, school and church are all in South Carolina. His maternal grandparents, older brother and friends are in South Carolina. The only Ohio connection with Greg Jr. is that Greg Sr. resides here and that Greg Sr. has decided not to return Greg Jr. and to keep him in Ohio. Nevertheless, respondent Ohio judge has assumed jurisdiction to determine the requested custody change of Greg Jr., despite an affidavit of Greg Jr., a thirteen-year-old young man, that he wants to reside with his mother. On these facts, does the Ohio court have jurisdiction paramount to that of the South Carolina court?

If this fact pattern were unusual, the decision of the majority would not be so sad. But it is not unusual! Cases like the one at bar are happening across this state and other states on a regularly recurring basis. Of course, it presents no problem if the plaintiff is either the court-order-violator parent or that parent's attorney. If the plaintiff or plaintiff's attorney can get a local judge to assume jurisdiction, then half the battle that has not been fairly joined is already won.

But what about the court-ordered custodial parent or that parent's attorney? What do these individuals do and whom do they go to see? How does the attorney explain to his client that the original court order apparently

does not mean anything and, all the while, meet his ethical responsibility to discourage self-help. These are not imaginary horribles. They are events occurring in Ohio and other states everyday. These are reasons why the UCCJA was enacted.

There is no question that Ohio is *not* Greg Jr.'s home state. R.C. 3109.22(A)(1). There is no question that Greg Jr. does *not* have a significant connection with Ohio nor is there available in Ohio substantial evidence concerning Greg Jr.'s personal relationships, protection, training and present or future care. R.C. 3109.22 (A)(2). There is *no* allegation or concern that Greg Jr. has been abandoned or has been mistreated. R.C. 3109.22 (A)(3). The South Carolina court has *not* declined to exercise jurisdiction and the South Carolina court *does* meet the prerequisites for jurisdiction set forth in R.C. 3109.22(A)(1), (2) and (3).

For these and other reasons, the General Assembly of this state enacted R.C. 3109.26(B) and 3109.31(A).

R.C. 3109.26(B) provides:

"Unless required in the interest of the child, the court *shall not* exercise its jurisdiction to modify a custody decree of another state *if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody.* If the petitioner has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction, if this is just and proper under the circumstances." (Emphasis added.)

R.C. 3109.31(A) provides:

"If a court of another state has made a custody decree, a court of this state *shall not modify that decree,* unless it appears to the court of this state that the court that rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code, or has declined to modify the decree, and the court of this state has jurisdiction." (Emphasis added.)

The intention of our General Assembly and the legislatures of other states that have adopted the UCCJA could not be more clear. Child snatching and forum shopping with all the resultant trauma to affected children and their parents are not favored. Orderly procedures are set forth to be employed in order to prevent — or at least discourage — "homer" based decisions. By our decision today, we send the wrong message to a parent who might be contemplating action like that taken by Greg Sr. We send the wrong message to other states that assumed we could be trusted to comply with what amounts to an interstate compact. By saying there is no clear duty to return Greg Jr. to relator while the action is pending in Ohio, we send the message that the courts, at the very least, can be used to buy time in the hope that the custodial parent will just give up because of expense or other reasons — or maybe that the child in question will have reached the age of majority by the time the courts are finally finished with him or her and, therefore, the case will become moot.

Because such messages are directly opposed to those that were meant to be sent by the adoption of the UCCJA, I dissent.