POWERS, Appellant,

v.

POWERS, Appellee.

[Cite as *Powers v. Powers* (1994), 95 Ohio App.3d 352.]

Court of Appeals of Ohio,
Crawford County.

No. 3-94-4.

Decided July 20, 1994.

*Spurlock, Sears, Pry, Griebling & McBride* and *G. Scott McBride,* for appellant.

*Regis Jones,* for appellee.

EVANS, Judge.

This is an appeal by the plaintiff, Luther Powers, Jr., from a judgment of the Court of Common Pleas of Crawford County exercising "emergency" jurisdiction to determine custody of Powers' minor children, pursuant to R.C. 3109.22, and granting custody of the children to their mother, Jannie Powers.

Luther ("appellant") and Jannie ("appellee") were married on October 27, 1985, in Welch, West Virginia. Thereafter, they resided in North Carolina, where two children were born of the marriage. Kathleen was born in 1987, and Brittanie was born in 1990.

Following an incident of domestic violence on June 7, 1993, appellant took the children and left North Carolina, traveling to Bucyrus, Ohio, where his parents resided. Although he was aware that he had been charged with a domestic violence offense in North Carolina, and a court order had been issued granting temporary custody of the children to appellee, on June 21, 1993 appellant filed a complaint for legal separation and petition for custody of the children, in the Common Pleas Court of Crawford County. On the same day, the court issued an *ex parte* order granting appellant temporary custody of the children based upon appellant's affidavits, which failed to apprise the court of the previously issued North Carolina custody order. On August 10, 1993, appellee filed her answer, along with a motion to dismiss the plaintiff's complaint for lack of jurisdiction, and a motion to modify the custody order. Attached to the motions were appellee's own affidavit and a copy of an "Ex Parte Domestic Violence Protective Order" issued on June 8, 1993 by a Stokes County, North Carolina court, granting temporary custody of the children to appellee.

On September 3, 1993, the court held a hearing on appellee's motions. Following the introduction of the evidence, which included the testimony of the parties and seven other witnesses, the referee determined that, pursuant to R.C. 3109.22, North Carolina was the proper state to make a custody determination regarding Kathy and Brittanie Powers. On September 9, 1993, the referee issued his report, concluding as follows:

"The children are present in the State of Ohio, and there is an emergency in the exercising of jurisdiction in deciding the custody of the children. They have been subjected to mistreatment and will continue to be subjected to mistreatment, unless this Court retains jurisdiction, at least on a temporary basis."

The referee then recommended to the court that the case, "after [appellee] has obtained physical custody of the children," should be transferred in part to the North Carolina court which had previously determined the custody issue and granted custody of the children to their mother. Further, the referee noted that, since there existed a "substantial risk" that appellant would refuse to return the children to North Carolina, "immediate relief is justified," and thus an interim order should be issued "without waiting for, or ruling on timely objections filed by the parties, as provided by Civil Rule 53." [1]

According to appellant, the children were then removed by the sheriff from a baby-sitter's care prior to appellant's receiving notice of the judgment. The

---

1. Civ.R. 53(E)(7) provides in pertinent part:

"The court may make an interim order on the basis of findings of facts contained in the referee's report without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections to the report."

referee noted in his recommendations to the court that such action was required to prevent appellant from again secreting the children from their mother. The recommendation was based upon the evidence and an altercation between the referee and appellant immediately following the motion hearing, wherein appellant blatantly refused to follow the recommendations absent the signature of the trial judge. In light of appellant's bold assertions during the altercation and during the actual hearing, the referee feared that, if immediate actions were not taken to return the children to their mother, appellant would again flee with the children. The judgment entry signed by the common pleas judge was issued immediately, as recommended by the referee.[2]

Appellant has appealed the court's judgment and order, asserting three assignments of error, which are, essentially, contentions supporting his assertion that the court erred in granting custody of the children to appellee.

## I

"The trial court committed substantial error and abused its discretion to the prejudice .of the plaintiff-appellant by changing custody of the parties' minor children from the plaintiff-appellant to the defendant-appellee, when the issue of change of custody was not before the court to be heard."

■ Appellant complains that the court erred by "changing" custody of the children when change of custody was not an issue before the court. However, custody was actually placed at issue by both parties. Appellant himself filed a petition for custody, and was granted an *ex parte* order, and appellee filed a motion to modify that order. A hearing was held on appellant's petition for custody and on appellee's motion to modify the order, after which the court issued its ruling, finding that the *ex parte* order was not supported by the evidence. The common pleas court then acted pursuant to R.C. 3109.22(A)(3), which permits that court to make a custody determination when it is for the protection of the children. Since appellant placed the question of custody before the trial court when he first filed his petition, he cannot now be heard to complain that the issue was not before the court. Therefore, the first assignment of error is overruled.

## II

"The trial court committed substantial error and abused its discretion to the prejudice of the plaintiff-appellant by considering statements not in evidence, making findings not supported by the evidence, in rendering its decision."

---

2. On March 8, 1994, following its review of appellant's objections to the referee's report and appellee's reply, the court then issued its final judgment entry adopting *in toto* the recommendations of the referee.

### III

"The trial court committed substantial error prejudicial to the plaintiff-appellant and ruled against the manifest weight of the evidence, when the court changed custody of the minor children to the defendant-appellee, when the evidence before the court was that the children were well cared for and integrated into the plaintiff's environment and routine and there was substantial evidence that a change of custody would be emotionally traumatizing for the children and subject them to further abuse."

 In the second and third assignments of error, appellant argues that the court's decision is not supported by the evidence. We disagree. In this case both parties were granted the opportunity by the court to fully present the facts of the case.[3] Based upon the facts presented, and on appellant's behavior immediately following the hearing, the court determined that the children's welfare was indeed threatened, by the actions of their father. The court found that appellant was the parent who had caused the children harm, by his actions in fleeing with his girlfriend to Ohio, taking and secreting the children without notice to their mother and fabricating allegations of sexual abuse of the children by a fictional "boyfriend" of appellee to convince the court to issue its *ex parte* order of custody, and by his attempts to convince the children that their mother was "mad" at them and had done "bad things" to them.

In paragraph 14 of his "findings and recommendations," the referee found as follows:

"At [the end of the hearing], Luther's conduct was such as to cause a reversal of opinion on the necessity of retention of jurisdiction of this case, under [R.C. 3109.22(A)(3) ]. He stated, 'Let me have them for just one night to say goodbye'; he also said, 'I still have legal custody in Ohio, don't I.' Further, he stated that Jannie could have supervised visitation, as he decided. His demeanor and statements, in addition to his prior conduct established by evidence, indicated a substantial risk that Luther would never return the children, or allow the children to be returned to North Carolina. Luther has never been [formally] served with the exparte [*sic* ] order in North Carolina. For this Court to surrender jurisdiction would subject the children to mistreatment, to wit: deprivation of companionship with their mother and substantial risk [of] being moved to yet another state."

---

**3.** A determination on the issue of jurisdiction should only be made after a hearing on the facts relevant to the provisions of the Uniform Child Custody Jurisdiction Act ("UCCJA"). See *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 349, 544 N.E.2d 657, 660, wherein the Ohio Supreme Court stated that "[t]he purpose of the UCCJA is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child[ren]."

Accordingly, the court, on an "emergency" basis, used its authority to vacate its previously issued *ex parte* custody order, and ordered temporary custody of the children to appellee. The referee further found, based upon the evidence submitted, and reasonable inferences drawn from the circumstances, that the children had been emotionally traumatized not by their mother and her fictional boyfriend, but by their father's "sinister" behavior.

Having reviewed the entire record, including the videotape exhibit, we find the court's decision to be well supported by the evidence. We further find that the court did not abuse its discretion. Proper notice was given to the parties, each party presented substantial evidence, and the court made a reasoned and insightful emergency custody determination which we find was in the best interests of the children, based upon the evidence.[4]

Under the Uniform Child Custody Jurisdiction Act, North Carolina is clearly the state with jurisdiction to determine custody of Kathleen and Brittanie. In fact, as noted *supra*, North Carolina has already issued a temporary order placing custody in appellee. No action taken by the Court of Common Pleas of Crawford County in this matter was intended to change the North Carolina order. Judge Kimmerline and his referee correctly recognized that these children were in a potentially harmful situation, which presented the court with an emergency. Invoking the authority granted under R.C. 3109.22(A)(3), the court issued an emergency custody order which placed the children in the custody of their mother until they could be safely returned to North Carolina, their home state, and the state where there exists the most "substantial evidence" concerning these children's past and present care and future welfare. See R.C. 3109.22(A)(1) and (2). Therefore, the second and third assignments of error are overruled.

Having found no prejudice to the appellant herein, in the particulars assigned and argued, we overrule the assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.

---

**4.** Even though appellee has not submitted a brief, our review of the evidence presented in the hearing established that much of appellant's argument is unfounded and/or exaggerated.