JOURNAL ENTRY AND OPINION
Appellant Leonard Hartman ("Hartman") appeals the Juvenile Court's decision to grant Melissa Hughes' ("Hughes") "Motion in Opposition to Jurisdiction."
Samantha Hartman was born on August 3, 1994, as the child of Hartman and Hughes. The parties lived together in Cleveland, Ohio from August 3, 1994, until May 28. 1996. On May 31, 1996, Hughes and Samantha traveled to Tampa, Florida to live with Hughes' family. On June 4, 1996, the State of Florida issued Hughes a residency card. A few months later, on November 19, 1996, Hartman filed a motion to establish a visitation schedule and modify parental rights and responsibilities in the Court of Common Pleas Juvenile Division Cuyahoga County.
On December 5, 1996, the juvenile court declined acceptance of Hartman's motion, stating in a letter to Hartman:
 " * * * we cannot accept your filing. The minor child Samantha Hartman had resided in Tampa, Florida for more than five months which establishes legal residence. Therefore I'am (sic) instructed to inform you that your issue should be filed in Tampa Florida.
Counsel was appointed for Hughes and a hearing was set. Hartman filed a brief in support of jurisdiction arguing he would be prejudiced by having to pursue a parenting determination in Florida, he does not have any minimum contacts with Florida, and Ohio is the home state of Samantha pursuant to R.C. 3109.22(A). Hughes filed a motion in opposition to jurisdiction, maintaining Ohio is an "inconvenient forum" pursuant to R.C. 3109.25(C), Florida is Samantha's home state, and because Samantha has been in Florida for over a year, it is the best jurisdiction for her future care, training, and personal relationships.
On October 8, 1998, the juvenile court issued its decision granting Hughes' motion in opposition to jurisdiction. The juvenile court stated:
 "This is the Court's decision regarding the issue of jurisdiction. There appears to be no dispute regarding paternity, with blood tests showing a 99.55% probability that Leonard Hartman is the biological father of Samantha Hartman. At present the mother has custody under O.R.C. 3109.042, although the statute was enacted after this action commenced. The child was almost 2 years old when the mother moved to Florida. The mother was a Florida resident for about 6 months where (sic) this case was filed. The mother has relatives in Florida and has established significant contacts there; she is financially unable to travel to and from Ohio for litigation. The Court determines Florida to be the home state of the child and the most convenient forum for the parties. The Mother's Motion in Opposition to Jurisdiction is granted and this case is dismissed for lack of jurisdiction."
Hartman timely appealed the juvenile court's decision and now presents a single assignment of error, which is unopposed, and states:
 THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN THE COURT DECLINED JURISDICTION OVER THE ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES OF SAMANTHA HARTMAN.
Hartman argues the trial court erred as a matter of law in declining to grant jurisdiction over the allocation of parental rights and responsibilities of Samantha Harman. Hartman contends neither Samantha nor Hughes could have become residents of another jurisdiction because at the time this action commenced all the parties were residents of Ohio. In support, Hartman cites R.C. 3109.22 which says a child's home state is that state where the child resided at the time of the commencement of an action or had been the child's home state within six months before commencement of the action. Hartman also maintains Samantha lived with him for six months prior to leaving for Florida as evidence of Ohio being her home state. In addition, he cites to the Uniform Child Custody Jurisdiction Act (UCCJA) which defines a home state as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent for at least six consecutive months." Also, Hartman claims simply because Samantha is not physically in Ohio does not mean this is not her home state and Ohio is also the most convenient forum as she has a close connection with him and his family. Lastly, Hartman argues the juvenile court should have communicated with the Florida court to determine which forum was the most convenient and this failure to communicate is unreasonable and erroneous.
The Ohio Supreme Court stated the objective of the UCCJA inState ex rel. Aycock v. Mowrey (1989), 45 Ohio St.3d 347:
 "The purpose of the UCCJA is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child. Annotation, Validity, Construction, and Application of Uniform Child Custody Jurisdiction Act (1979 [1980]), 96 A.L.R.3d 968, 973." Id. at 349.
Determining custody under the UCCJA is within the discretion of the trial court. Id. The Supreme Court has held that the term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. A reviewing court should be guided by a presumption that the findings of a trial court are correct. In re Jane Doe 1 (1991), 57 Ohio St.3d 135.
This court has previously found that determination of jurisdiction under the UCCJA is a two-step process. The first step is to determine if Ohio has jurisdiction, and the second step is to determine whether Ohio should exercise that jurisdiction. Mayor v. Mayor (1991), 71 Ohio App.3d 789.
In determining whether Ohio has jurisdiction in this matter, we must look at R.C. 2151.23, which mandates that the court is to exercise its jurisdiction in custody matters in accordance with R.C. 3109.21 to 3109.36. See R.C. 2151.23(F). These sections, R.C. 3109.21 to 3109.36, codify the UCCJA in Ohio.
Specifically, R.C. 3109.22 provides the following guidelines for determining the court's jurisdiction:
 "(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:
 "(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;
 "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
R.C. 3109.21 defines home state as the following:
 (E) `Home state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
As to the initial question concerning jurisdiction, we find the juvenile court erred by not finding Ohio to be Samantha's home state. R.C. 3109.22(A) states a court has jurisdiction to make a parenting determination if the state had been the child's home state within six months before commencement of the proceeding and had been removed from this state. This action was commenced on November 19, 1996, and Hughes and Samantha stopped living with Hartman on May 28, 1996. Thus, Samantha did live with Hartman when Ohio was her home state, from May 19, 1996, until May 28, 1996, and Hughes removed Samantha to Florida. Therefore, Ohio was Samantha's home state and the juvenile court had jurisdiction to make a parenting decision.
However, we must look to the second part of the two-step inquiry to determine whether Ohio should have exercised its jurisdiction. The juvenile court decided not to exercise jurisdiction because it found Florida to be Samantha's home state and a more convenient forum. Since we already established the juvenile court erred in finding Ohio was Samantha's home state, we must now decide whether the juvenile court abused its discretion in finding Florida a more convenient forum, i.e., in not exercising its jurisdiction.
The finding of an inconvenient forum is governed by R.C.3109.25 which states:
 "(A) A court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a parenting determination under the circumstances of the case and that a court of another state is a more appropriate forum.
 "(B) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.
 "(C) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account, but is not limited to, any of the following factors:
 "(1) If another state is or recently was the child's home state;
 "(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
 "(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
 "(4) If the parties have agreed on another forum that is no less appropriate.
 "(D) Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court for the purpose of assuring that jurisdiction is exercised by the more appropriate court and that a forum is available to the parties.
 "(E) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions that may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.
In Mayor, 71 Ohio App.3d 794, we held, "[a] court that has jurisdiction to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum."
Hartman argues Ohio is a more convenient forum for Samantha because she has a close connection with him and his family, all of whom live in Ohio. Plus, there is substantial evidence concerning Samantha's present and future care, protection, training and personal relationships, which are more readily available in Ohio than Florida.
In her motion in opposition to jurisdiction, Hughes filed an affidavit with the juvenile court averring: (1) she and Samantha arrived in Tampa, Florida on June 1, 1996, (2) she went to Florida to be with her mother, her grandparents, her aunt, and her brother, (3) she has rented an apartment and established residency in Florida as of June, 1996, (4) she works at a day care center where Samantha is enrolled, (5) she has a physician for Samantha, and (6) she cannot afford to travel to Ohio to litigate this case.
In its journal entry, filed December 2, 1998, the juvenile court determined Florida was a more convenient forum based on Hughes being a resident of Florida for about six months, Hughes having relatives and significant contacts in Florida, and Hughes being financially unable to travel to and from Ohio for litigation.
Hartman did not submit any evidence to contravene the finding of the trial court and did not submit any evidence to substantiate his claim that Ohio is a more convenient forum than Florida. Hartman claims "there is substantial evidence concerning Samantha's present and future care, protection, training and personal relationships, which are more readily available in Ohio than Florida" but he does no more than make this statement.
Accordingly, we find the trial court did not abuse its discretion in finding Florida a more convenient forum and declining to exercise jurisdiction in the instant matter. As a result, Hartman's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., PATRICIA A. BLACKMON, J., CONCUR.
 _________________ PRESIDING JUDGE JOHN T. PATTON