OPINION
{¶ 1} Appellant, Edna Mae Jones, appeals from the Mahoning County Juvenile Court's February, 27, 2004, Judgment Entry affirming the Magistrate's decision. The trial court ruled that Alabama had proper jurisdiction for the minor child's permanent custody determination. Based on the following, Appellant's assigned errors are overruled and the trial court's decision is affirmed.
 {¶ 2} The father has failed to file a brief in this case, and therefore this Court may accept the mother's statement of facts and issues as correct and reverse the judgment if her brief reasonably appears to sustain such action. App.R. 18(C).
 {¶ 3} Appellant is the mother of the minor child, Danielle Nicole Sklenchar (the mother's maiden name), and Appellee, Rubin Jones, is the minor's father. Together, the parties have five children.
 {¶ 4} After Danielle's birth but before the parties were married to one another, the well being of one of the parties' other minor children became an issue following a complaint to the Mahoning County Department of Children's Services ("MCDCS"). Ultimately, the MCDCS filed a motion seeking protective supervision or temporary custody averring that Appellant was not cooperating with the MCDCS. (July 8, 1993, Motion for Protective Supervision or for Temporary Custody.) Thereafter the case was consolidated to include all of the parties' children, including Danielle.
 {¶ 5} After a hearing, custody of all of the children was returned to Appellant under protective supervision. (August 19, 1993, Report and Judgment Entry Granting Legal Custody.)
 {¶ 6} Following this episode, in April of 1994, the Mahoning County Court of Common Pleas, Juvenile Division recognized Appellee as the father of the minor children, including Danielle. (94-PAR-247, April 8, 1994, Judgment Entry.)
 {¶ 7} The parties were married for the first time in 1995. After approximately two years of marriage, the Appellant filed a domestic violence complaint against Appellee father. The Mahoning County Domestic Relations Court held that Appellant's arguments were not compelling, and it dismissed her complaint. (Memorandum in Opposition to Objections to the Decision of the Magistrate, Exhibit "B".)
 {¶ 8} Thereafter, in 1998, Appellee father filed a domestic violence complaint against Appellant. The Domestic Relations Court approved the magistrate's temporary protective order against the mother and ordered, "Petitioner [father] is residential parent until further order. The court will make further parenting orders on June 30, 1998." (May 28, 1998, Journal Entry Adopting Magistrate's Decision.) The mother was ordered to leave the marital home. However, the June 30, 1998, permanent hearing never occurred, and the domestic violence case was dismissed based on Appellee father's failure to appear at a hearing.
 {¶ 9} Notwithstanding, Appellee father has had physical custody of the minor children since 1997. (Feb. 18, 2003, Appellant's Parenting Affidavit.) The parties' minor children resided with their father in Youngstown, Ohio from September, 1997, through June of 2002. He then relocated with the children to Dothan, Alabama in June of 2002 until the present time. (Feb. 18, 2003, Appellant's Parenting Affidavit.)
 {¶ 10} Neither parent requested a divorce, legal separation or annulment, and neither requested a parenting determination before 2003.
 {¶ 11} On February 20, 2003, Appellant filed a document styled, "Motion to Show Cause for Failure to Return Children and for Improper Removal of Children from State of Ohio." On February 25, 2003, she filed a motion requesting that she be designated the residential parent and for support.
 {¶ 12} In the last week of June, 2003, Danielle left her father's home. Appellant traveled to Alabama and brought Danielle to Ohio. (July 22, 2003, Magistrate's Decision.) Danielle left after her father apparently tried to discipline her, which included a referral to an Alabama juvenile court. (July 22, 2003, Magistrate's Decision.)
 {¶ 13} In July of 2003, Appellee father filed a complaint for divorce in the Circuit Court of Houston County, Alabama, Family Division. The divorce complaint was filed approximately five months after Appellant's motions. Appellee father requested full custody of all of the parties' minor children in his complaint. At no time did Appellant contest the Alabama divorce proceeding.
 {¶ 14} On August 29, 2003, Appellee father filed his Motion to Dismiss and/or Transfer Due to Lack of Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted in response to Appellant's Motions. Various response memorandums were filed.
 {¶ 15} Thereafter, the Circuit Court of Houston County, Alabama, Family Division, granted Appellee father's request for a divorce and granted him permanent custody of all of the minor children including Danielle. (Oct. 24, 2003, Judgment Entry of Divorce.)
 {¶ 16} On November 10, 2003, the Magistrate filed his decision relative to the parties' pending Ohio motions. He concluded:
 {¶ 17} "The Juvenile Court is a statutory creation and its jurisdiction is codified in O.R.C. 2151.23 which requires that the Court is to exercise [jurisdiction] in accordance with O.R.C.3109.21 to 3109.36. The jurisdiction to make parenting determinations relative to a child is set forth in O.R.C.3109.22. It is uncontroverted that the minor child has resided in the State of Alabama, has been subject of schooling and court action in the State of Alabama, and the issue of the permanent care and custody of all the minor children has already been adjudicated in * * * Alabama * * *.
 {¶ 18} "This Court is without jurisdiction in this matter. The ex parte order shall be dissolved and custody of the minor child, Danielle Nicole Sklenchar shall be place [sic] with her father, Rubin Jan Jones.
 {¶ 19} "* * *
 {¶ 20} "All other matters transferred to the paternity docket * * * are dismissed."
 {¶ 21} Appellant timely filed her objections to the magistrate's decision. The main thrust of her argument was that since Appellee father "unlawfully" removed the children from Ohio to Alabama, the home state rule precludes Alabama from adjudicating custody. Her argument partially springs from the Mahoning County Juvenile Court's August 19, 1993, Report and Judgment Entry Granting Legal Custody to Appellant following Children's Services' attempt to remove the children from Appellant's home. She claimed that this order returning the children to her was the sole valid custody determination in this matter. As such, she claimed Appellee father at no time had legal custody of the children and it was unlawful for him to transfer the children out of state. Appellant asserted that the Mahoning County Juvenile Court's 1993 entry in her favor was entitled to full faith and credit by the State of Alabama.
 {¶ 22} Appellant also argued that Danielle was born and raised in Ohio and that she had only resided in Alabama for one year. Appellant mother asserted that since Danielle's extensive history was in Ohio and that Appellant has consistently resided in Ohio, Ohio has proper jurisdiction.
 {¶ 23} Following a January, 2004, hearing on the objections, the Mahoning County Juvenile Court affirmed the magistrate's decision finding that the State of Alabama had proper jurisdiction over the minor child's custody. (February 27, 2004, Judgment Entry.) It is from this judgment entry that the mother has timely appealed.
 {¶ 24} Appellant asserts two assignments of error on appeal.
 {¶ 25} "I. The Decision of the Trial Court Finding That the Mahoning County Juvenile Court lacked Jurisdiction over custody of the minor children is against the manifest weight of the evidence."
 {¶ 26} "II. Alabama Lacked Custody Jurisdiction in the Parties' Uncontested Divorce Proceeding Which Was Not Filed in Alabama until after Appellant Filed Her Motion to Modify Custody in Mahoning County, Ohio Juvenile Court."
 {¶ 27} Appellant's claims on appeal can be essentially categorized into three arguments. First, Appellant asserts that the Mahoning County Juvenile Court issued a valid custody decree in her favor in 1993, and that it should now be enforced. Appellant's second argument alleges that Danielle's home state should be considered to be Ohio. Appellant's third claim asserts that even if the trial court concludes that Alabama was Danielle's home state, Danielle has a significant connection with the State of Ohio, and it would be in her best interest to have the custody dispute determined in Ohio.
 {¶ 28} Contrary to the mother's assertion that the trial court decision was against the manifest weight of the evidence, the determination as to whether a trial court may exercise jurisdiction over a case under the Uniform Child Custody Jurisdiction Act (UCCJA) is left within the sound discretion of the trial court. State ex rel. Aycock v. Mowery (1989),45 Ohio St.3d 347, 352, 544 N.E.2d 657; Bowen v. Britton (1993),84 Ohio App.3d 473, 478, 616 N.E.2d 1217. Thus, the trial court's decision confirming Alabama's jurisdiction will not be disturbed on appeal unless the trial court's decision was clearly unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 29} "The preeminent purpose of the UCCJA is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child."Bowen, 84 Ohio App.3d 473, 478, 616 N.E.2d 1217.
 {¶ 30} The juvenile court's jurisdiction is set forth in R.C.2151.23(F)(1), which mandates that the court is to exercise its jurisdiction in custody matters pursuant to R.C. 3109.21 through3109.36. These sections codify Ohio's adoption of the UCCJA. Alabama has likewise adopted the UCCJA. D.B. v. P.B. (1997),692 So.2d 856.
 {¶ 31} The main thrust of all of Appellant's argument is founded on the assumption that the Mahoning County Juvenile Court's 1993 return of custody of the children to Appellant mother constitutes an initial and binding custody decree as to the parties' future entitlement to custody of the children.
 {¶ 32} However, R.C. 3109.21 provides, in part:
 {¶ 33} "(B) `Parenting determination' means a court decision and court orders and instructions that, in relation to theparents of a child, allocates parental rights andresponsibilities for the care of the child, including anydesignation of parenting time rights, and designates aresidential parent and legal custodian of the child or that, in relation to any other person, provides for the custody of a child, including visitation rights. It does not include a decision relating to child support or any other monetary obligation of any person. (Emphasis added.)
 {¶ 34} "(C) `Parenting proceeding' includes proceedings in which a parenting determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." (Emphasis added.)
 {¶ 35} Appellant's claim that the Mahoning County Juvenile Court's 1993 return of custody to her constitutes a parenting determination is incorrect. First and foremost, the return of custody from Children's Services occurred before the father's paternity was even established. (94-PAR-247, April 8, 1994, Judgment Entry.) It is perhaps for this reason that the record does not reflect that the minor children's custody as between the parties was in issue in 1993. The custody determination to be made in 1993 was only between the mother and the Department of Children's Services. Thus, the 1993 entry did not allocate the parties' parental rights and responsibilities as a parenting determination is defined by law. R.C. 3109.21(B).
 {¶ 36} In addition, the parties were married in 1995 after paternity was established. R.C. 2111.08 provides in part:
 {¶ 37} "The wife and husband are the joint and natural guardians of their minor children and are equally charged with their care * * *. The wife and husband have equal powers, rights, and duties and neither parent has any right paramount to the right of the other concerning the parental rights and responsibilities for the care of the minor or the right to be the residential parent and legal custodian of the minor * * *."
 {¶ 38} Because the 1993 order in no way determined custody issues as between the parties, and there is no other valid custody order of record, the 2003 motions filed by Appellant and the divorce proceeding instituted by Appellee are the first time any court is being asked to take jurisdiction. Appellant has no valid custody order to enforce. It is on this faulty premise that Appellant bases all of her arguments.
 {¶ 39} Appellant mother asserts that the Federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, applies and precludes Alabama from modifying Ohio's initial custody decree.28 U.S.C. § 1738A(a) provides in part:
 {¶ 40} "The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State."
 {¶ 41} Subsections (g) and (h) concern visitation rights; whereas subsection (f) provides that a state may modify another state's custody determination if the subsequent state has jurisdiction to make the determination and if the original state either no longer has jurisdiction or if it declines jurisdiction.28 U.S.C. § 1738A.
 {¶ 42} In the instant cause, however, the record discloses that there was never a valid Ohio custody determination between these parties to modify.
 {¶ 43} The Ohio Supreme Court in Justis v. Justis (1998),81 Ohio St.3d 312, 691 N.E.2d 264, has addressed the PKPA in a comparable case. Justis held that states are required to afford full faith and credit to another state court's valid child custody order. Justis also stands for the proposition, consistent with Appellant's argument on appeal, that the PKPA provides exclusive jurisdiction to the original home state concerning interstate custody disputes and eliminates the potential for a subsequent home state's concurrent jurisdiction over a dispute if the original state has continuing jurisdiction. Id. at syllabus; In re E.T., 155 Ohio App.3d 718,803 N.E.2d 850, 2004-Ohio-196, ¶ 13.
 {¶ 44} In deciding North Carolina did not have jurisdiction, the Supreme Court stressed that the terms of the PKPA prevail over the UCCJA since the PKPA was designed to eliminate the possibility of two states' concurrent jurisdiction. Id. at 317. The Court stated:
 {¶ 45} "Section 1738A(f), Title 28, U.S. Code narrowly defines when a state court can modify a decree issued by the original state court: * * * (1) the state seeking to modify the decree must have jurisdiction to make a child custody determination, and (2) the original state must no longer have jurisdiction, or must have declined to exercise such jurisdiction." Id.
 {¶ 46} In Justis, North Carolina satisfied the first prong since North Carolina was the home state. Id. However, theJustis Court concluded that North Carolina could not assert its jurisdiction since Ohio had continuing jurisdiction under 1738A(d), Title 28, U.S. Code, which provides that the jurisdiction of a state continues as long as its own jurisdictional requirements are met and the state remains the residence of at least one party. Id.
 {¶ 47} In the instant cause, however, the Mahoning County Juvenile Court concluded that it did not have continuing jurisdiction under any of the R.C. 3109.22 exceptions. (Feb. 27, 2004, Judgment Entry.) The record does not disclose that there exists a custody determination in Ohio to modify. As such, Ohio cannot have "continuing" jurisdiction, and the PKPA is inapplicable.
 {¶ 48} Appellant next contends that Appellee father unlawfully removed the minor children from Ohio. She asserts that because the Mahoning County Juvenile Court made an initial custody determination via its 1993 return of custody to her, Mahoning County should have maintained jurisdiction over any subsequent custody dispute. Loetz v. Loetz (1980),63 Ohio St.2d 1, 2, 406 N.E.2d 1093. Once again, Appellant is basing her claims on the faulty premise that there exists a valid custody determination in her favor.
 {¶ 49} The mother argues that the Juvenile Court's decision finding Alabama had jurisdiction encourages parents to ignore the laws of this state and effectively allow forum shopping. However, R.C. 2111.08 establishes natural parents' equal rights and duties and joint guardianship, and the father's relocation with the children to Alabama was not contrary to any Ohio order. Thus, Appellee has not ignored any law of this state and has a right to seek a jurisdictional determination as to these custody matters.
 {¶ 50} The UCCJA's purpose is: "to establish a measure of interstate stability concerning child custody awards, and to prevent interstate child snatching by parents seeking a favorable custody award in the forum of their choice." Bowen,84 Ohio App.3d at 478, 616 N.E.2d 1217. Further, the UCCJA generally limits one state's interference with another state's custody proceedings. Mowery, 45 Ohio St.3d 347, 349, 544 N.E.2d 657.
 {¶ 51} Appellant directs this Court's attention to Mowery,
for the proposition that a state's custody jurisdictional statute should not be used to allow the removal of a minor in violation of another state's valid custody order. Id. at 352. While this is a correct statement of the law as earlier addressed, Appellant mother bases this claim on her belief that the Mahoning County Juvenile Court's 1993 entry returning the children to her following their stay with Children's Services was a valid custody determination as to the conflicting parental rights between herself and Appellee father.
 {¶ 52} However, there was never a valid Ohio custody order in the instant cause between these parties. Neither parent filed for divorce, legal separation, or annulment, and both parents had legal custody. R.C. 2111.08.
 {¶ 53} Appellant uses her faulty logic to contend that Ohio should be declared Danielle's home state. Appellant's second main argument is founded on her belief that Appellee father's alleged unlawful removal of the children from Ohio prevented Alabama from becoming the children's home state. She alleges that this "unlawful" removal precludes the Juvenile Court's finding that Alabama has proper jurisdiction via the home state exception in R.C. 3109.22(A)(1). (Feb. 27, 2004, Judgment Entry.)
 {¶ 54} R.C. 3109.22 sets forth the exceptions to the rule limiting interstate interference in custody proceedings:
 {¶ 55} "(A) No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:
 {¶ 56} "(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had beenthe child's home state within six months before commencement ofthe proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state; (Emphasis added.)
 {¶ 57} "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 {¶ 58} "(3) The child is physically present in this state and either has been abandoned or * * * is otherwise neglected or dependent;
 {¶ 59} "(4) It appears that no other state would have jurisdiction * * * or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction."
 {¶ 60} Appellant asserts that the trial court erroneously recognized Alabama's jurisdiction over Danielle's custody via the home state exception since Appellee father "unlawfully" moved the children to Alabama. She appears to believe that because she did not in someway formally consent to the relocation (nor formally object to it), the move was somehow unlawful. The record does not support this assertion, here. Appellant contends that Appellee father, while the natural father, was never legally entrusted with custody, despite the fact that the children resided exclusively with their father for several years. However, it seems clear from the record that both parties had equal parenting rights once the Appellee's domestic violence complaint was dismissed. R.C. 2111.08.
 {¶ 61} Further, in Ohio,
 {¶ 62} "`Home state' means the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, * * *. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." R.C. 3109.21(E).
 {¶ 63} It is clear that all of the parties' children, including Danielle, have resided with their father in Alabama since June of 2002. (Feb. 18, 2003, Appellant's Parenting Affidavit.) Danielle did not run away from her father's home until June of 2003, approximately one year later. (July 22, 2003, Magistrate's Decision.) As such, it is clear that Danielle's home state immediately preceding the time involved and before the mother filed her February, 2003, motions was Alabama. R.C.3109.21(E). Thus, the underlying decision that Danielle's home state is now Alabama was correct.
 {¶ 64} Appellee father has apparently had physical custody of the children since the temporary order of 1998. Since that time, Appellant did not request court-ordered visitation or custody until February, 2003. (Feb. 18, 2003, Appellant's Parenting Affidavit.) Her request was filed approximately eight months after their relocation to Alabama, and after Alabama became Danielle's home state. R.C. 3109.22(A)(1); (Feb. 25, 2003, Motion to Designate Mother as Residential Parent.). Had Appellant exercised her parental rights in Ohio prior to the children's sixth-month relocation anniversary, then Ohio would have been presumed to be Danielle's home state. R.C. 3109.22(A)(1).
 {¶ 65} Appellant's final assertion on appeal is that Ohio has jurisdiction over the instant dispute pursuant to R.C.3109.22(A)(2). R.C. 3109.22(A)(1) through (4) provides exceptions to the rule that the UCCJA limits interstate interference in custody disputes, and applies to an Ohio court's assumption of jurisdiction to address custody in the first instance. Mowery,45 Ohio St.3d 347, 349-350, 544 N.E.2d 657349. The exception found in R.C. 3109.22(A)(2) provides for Ohio to take jurisdiction if the trial court makes three findings: first, that it is in the best interests of the child; second, one of the parties seeking custody and the child have a significant connection with Ohio; and third, substantial evidence of the child's present or future care exists in Ohio.
 {¶ 66} In support of applying this exception, the mother asserts that Danielle's one-year history in Alabama pales in comparison to her lifetime history in Ohio. She asserts that Ohio and not Alabama "holds the key" to the minor child's past and that Ohio, like Alabama, could also provide evidence of her care and relationships for her future. However, R.C. 3109.22(A)(2) focuses solely on the child's present and future care, protection, training, and personal relationships, and not past events.
 {¶ 67} The record in the instant matter reflects that the trial court held a hearing on the mother's objections to the Magistrate's decision. However, there is no transcript of this proceeding before this Court. Based on the limited record before this Court, we can glean that some evidence of Danielle's future and present care exists in both Ohio and Alabama. However, the statute requires a showing of, "substantial evidence concerning the child's present or future care, protection, training, and personal relationships" in this state. There is no substantial evidence before this Court reflecting Danielle's future or present care in Ohio.
 {¶ 68} Again, the exception to the home state rule found in R.C. 3109.22(A)(2) merely "permits" an Ohio court to assume jurisdiction if it makes the requisite three findings. Mowery,
349-350. A trial court's decision to assume jurisdiction under the UCCJA is left to the sound discretion of the trial court. Id. at 352; Bowen, 84 Ohio App.3d 473, 478, 616 N.E.2d 1217.
 {¶ 69} Based on the lack of transcript and the trial court's extensive home state findings, this Court cannot conclude that the trial court abused its discretion in not assuming jurisdiction under R.C. 3109.22(A)(2).
 {¶ 70} Alabama issued the first permanent custody decree as to the parties' parental rights on October 24, 2003, and the Mahoning County Juvenile Court relied on this decision in its entry declining jurisdiction. Appellant mother objects to the Juvenile Court's reliance on the Alabama divorce decree granting the father custody of the minor children. Both the Magistrate's Decision and the final Judgment Entry reference the fact that Alabama already adjudicated the custody issue pertaining to all the parties' minor children. (November 10, 2003, Magistrate's Decision; Feb. 27, 2004, Judgment Entry.) The mother objects to this reliance since the father's divorce complaint was not filed in Alabama until after her custody motions were filed in Mahoning County.
 {¶ 71} Based on her earlier filings, she asserts that Alabama's "unauthorized" exercise of jurisdiction cannot simply be validated because the forum state, Ohio, agrees to the transfer. However, the Mahoning County Juvenile Court was authorized to find that Mahoning County was an inconvenient forum for determining the minor child's permanent custody. R.C.3109.25.
 {¶ 72} In the instant cause, the father argued that Alabama was a more convenient forum based on his limited mobility as a result of certain health problems, in addition to the fact that he has sole physical custody and responsibility of the other minor children. Further, Danielle's current school and juvenile records are in Alabama. (Aug. 29, 2003 Motion to Dismiss and/or Transfer.)
 {¶ 73} The trial court did not specifically conclude in its entry that Ohio was an inconvenient forum. The Mahoning County Juvenile Court simply concluded that Alabama had proper jurisdiction since it was her home state. R.C. 3109.22(A)(1).
 {¶ 74} Nevertheless, there was no abuse of discretion by the Mahoning County Juvenile Court since its decision that Alabama had jurisdiction over the minor child's custody dispute is supported in the record and is not arbitrary, unreasonable, or unconscionable. Blakemore, 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 75} Based on the above, the mother's assigned errors lack merit and are hereby overruled. The Mahoning County Juvenile Court's decision concluding that Alabama had proper jurisdiction over the custody dispute is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.