OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral argument before this court. Appellant Stephanie Esaw appeals the decision of the trial court awarding custody to the Appellee Randy Esaw. Stephanie claims the trial court initially erred by exercising jurisdiction over the custody matter since the necessary prerequisites to jurisdiction under R.C. 3109.22 were not met. Stephanie asserts that Illinois would be the proper forum to settle the custody dispute since the minor child had been raised there. Finally, Stephanie argues the trial court erred by granting custody to Randy because this judgment was against the manifest weight of the evidence.
 {¶ 2} Because we conclude there were significant contacts between Randy and the State of Ohio and the minor child and the State of Ohio, the trial court did not abuse its discretion by exercising jurisdiction over this case. Nor do we find the trial court abused its discretion by awarding custody of the minor child to Randy as this decision was not against the manifest weight of the evidence. Thus, we affirm the judgment of the trial court.
 Facts {¶ 3} Stephanie and Randy were married on June 25, 1991 in Illinois. The parties had a son, Randy, on February 4, 1992. Within a year of the child's birth, Randy left Stephanie who continued to reside with the child in Illinois. The child lived with Stephanie in Illinois for the next seven years, but had been spending the summers with Randy for the past six years.
 {¶ 4} On August 10, 2001, Randy filed a complaint for divorce in Belmont County, Ohio in which he requested custody of his son. Stephanie filed a pro se response challenging the court's jurisdiction to decide the custody issue. The trial court, however, never directly addressed the issue.
 {¶ 5} A magistrate heard the motion for temporary custody and the child was interviewed. After this hearing, Stephanie was granted temporary custody of the child. The final hearing was held and the child was interviewed for a second time. On both occasions, the child expressed his desire to live with his father. Testimony regarding the custody issue was also taken at this time.
 {¶ 6} The child was then sent home to Illinois with Stephanie pending the decision. Later, the Magistrate recommended custody of the then nine-year-old boy be granted to Randy. The following is an excerpt from the judgment entry containing the trial court's findings of fact which, notably, have not been contested by either party.
 {¶ 7} "Mr. Esaw had some problems when he was in the service (demoted in rank due to fighting) and when he was living with Stephanie. But he now has a stable life style. He has worked in construction; in food service at Undos, at Belmont Corrections Facilities, and at McDonald's; and for the last 18 months at Telespectrum. * * * For the past 7 years he has lived with Michele Marlin continuously. Ms. Marlin has a college student daughter, Leann, with whom Little Randy is quite attached. They live in a three-bedroom apartment in which the third bedroom is available for Randy. The Marlins are Caucasian. Big Randy and Stephanie Esaw are African-American. Neither Michele nor Leann Marlin foresee any problems due to Little Randy being African-American. Instead they both testified they eagerly would welcome Little Randy who is well behaved and personable.
 {¶ 8} "The mother has recently purchased a three bedroom home in Belleville, Illinois. She moved there on May 1, 2001 after owning and living in another home in East St. Louis for seven years. She has worked at Kmart. She is on leave of absence from her employment at the U.S. Post office. She is now a certified day care provider in her own home where the total number of children (including hers) is limited to 10. Her live-in boyfriend for the last 8-9 months has been Earnest Atkins Jr. III, who also works for the post office. Mr. Atkins noted Little Randy was helpful in getting his 4-year-old brother `Kenney' ready in the morning, while his mother helped the two girls get ready. Little Randy gets along with Mr. Atkins. Apparently one of Stephanie's prior live-in boyfriends was Butch, who is Destiny [Randy's half sister]'s father, who is still involved in dealing with the children on occasion, and who both Little Randy and Big Randy thought was at one time an inappropriate disciplinarian as to Little Randy.
 {¶ 9} "The record is clear the father has never paid child support for Little Randy, but has made occasional gifts over the years at various times. Though Big Randy's Bellaire address of 227 West 27th Street was obvious in February of 1999 when he was removed from the mortgage * * *, the Illinois Department of Public Aid claimed his last known address was 225 27th Street and claimed he could not be located for child support purposes."
 {¶ 10} The trial court adopted these findings and the decision of the Magistrate on January 10, 2002, despite Stephanie's objections. It is from that decision Stephanie now appeals.
 UCCJA Jurisdiction {¶ 11} Stephanie asserts as her first assignment of error:
 {¶ 12} "The trial court erred as a matter of law in exercising subject matter jurisdiction over the minor child because the necessary prerequisites to jurisdiction under O.R.C. § 3109.22 were not met. The court should have declined jurisdiction because Illinois was the appropriate forum to address parental rights and responsibilities."
 {¶ 13} R.C. 3109.21 et seq. represent Ohio's adoption of the UCCJA, which was drafted to prevent jurisdictional disputes between two states and to promote cooperation between state courts in order to achieve the best interest of the child in custody actions. State ex rel.Aycock v. Mowrey (1989), 45 Ohio St.3d 347, 349, 544 N.E.2d 657; Bowenv. Britton (1993), 84 Ohio App.3d 473, 478, 616 N.E.2d 1217. The determination of whether subject matter jurisdiction may be exercised under the UCCJA is reserved to the sound discretion of the trial court.State ex. rel Aycock v. Mowery (1989), 45 Ohio St.3d 347, 352; Bowen v.Britton (1993), 84 Ohio App.3d 473, 478. Accordingly, we review the trial court's jurisdictional determination for an abuse of discretion. Aycockand Bowen. The term abuse of discretion connotes more than an error of judgment; it implies that a court's decision is unconscionable, arbitrary or unreasonable. State v. Montgomery (1991), 61 Ohio St.3d 410, 413,Tracy v. Merrell-Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147,152.
 {¶ 14} In making determinations regarding whether to exercise their subject matter jurisdiction over child custody matters governed by the UCCJA, Ohio courts are guided by R.C. 3109.22(A). This statute requires one of the following four requirements to be present before a court may exercise subject matter jurisdiction:
 {¶ 15} "(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;
 {¶ 16} "(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 {¶ 17} "(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
 {¶ 18} "(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction."
 {¶ 19} Generally, sworn testimonial evidence is introduced on the factors specified in R.C. 3109.22(A) in order that the trial court may determine, within its discretion, if it should exercise jurisdiction. More particularly, a court's decision regarding subject matter jurisdiction under the UCCJA should generally only be made after a plenary hearing and a full explanation of the facts essential to the decision. Bowen v. Britton (1993), 84 Ohio App.3d 473, 479,616 N.E.2d 1217. Some courts have therefore held that a trial court abuses its discretion in failing to hold an evidentiary hearing when disputed issues of fact pertaining to subject-matter jurisdiction are raised by the parties. Id. at 480, 481; Martin v. Martin (Oct. 30, 1992), 5th Dist. No. 92-CA-46; Gamble v. Tenney (July 31, 1987), 11th Dist. No. 11-240; Pruitt v. Taber (Apr. 5, 2002), 2nd Dist. No. 2001-CA-78.
 {¶ 20} But another group of courts have held, and we agree, that where the record contains facts sufficient to determine jurisdiction, the failure to hold an evidentiary hearing is not reversible error. See Mayorv. Mayor (1991), 71 Ohio App.3d 789, 795-96, 595 N.E.2d 436; Lay v.Hensley-Lay (Oct. 5, 2001), 6th Dist. No L-00-1399, Smith v. Schroeder
(Dec. 12, 1997), 6th Dist. No. L-97-1235.
 {¶ 21} We find the trial court did not commit reversible error by failing to conduct an evidentiary hearing since there appear to be sufficient undisputed facts to determine this particular question. Our analysis now proceeds to Stephanie's claim that none of the criteria listed in R.C. 3109.22 would be applicable to this situation. More specifically, she maintains Ohio was not the home state of the child, the child is not in an emergency situation, there has been no significant connection between the state and the child, and there is no substantial evidence in the state of Ohio pertaining to the child's present or future care, protection, training, and personal relationships.
 {¶ 22} This court addressed a similar argument challenging the jurisdiction of an Ohio court in the case of In re Rayl, 7th Dist. No. 00-BA-55, 2002-Ohio-5176. The appellant in Rayl asserted that jurisdiction was not proper because the minor child was a resident of West Virginia and had not lived in Ohio long enough to establish sufficient ties with the forum. Despite the fact the child had only lived in Ohio a total of six months, this court determined the minimum qualifications of R.C. 3109.22(A)(2) had been met.
 {¶ 23} "First, the minor child is currently within the borders of the state. Secondly, the child has substantial connections with the state as he is attending school in Ohio. As appellee wishes to have the child live with him in Ohio, it is the forum which contains evidence concerning the child's present and future `care, protection, training and personal relationships.' Id. While there is evidence regarding the child's past care and education in West Virginia, the statute specifically addresses evidence regarding the child's present and future care, not the child's past living environments. Moreover, this evidence can be relocated for use in an Ohio court.
 {¶ 24} "* * *
 {¶ 25} "Since both appellee and his wife are residents of Ohio and intend to remain in the state, appellee certainly meets the necessary `significant connection' requirements of R.C. 3109.22." Rayl, at ¶¶ 16-19.
 {¶ 26} These findings were echoed by the First District in Shiverv. Shiver (Dec. 20, 1995), 1st Dist. No. C-950239 where the court decided that,
 {¶ 27} "[a]lthough the children lived with appellee during the summer, they did not live six consecutive months in Ohio. Ohio is, therefore, not the "home state" of the children. See R.C. 3109.21(E).
 {¶ 28} "However, under R.C. 3109.22(A)(2), Ohio could retain jurisdiction in this case. Appellee lives in Ohio and the children spend a significant amount of time with him. Although the children make their primary residence with appellant, appellee has joint custody of the children with appellant. During their marriage, the family lived in Ohio." Id. at 4.
 {¶ 29} The facts in the present case closely parallel those ofRayl and Shiver in that Randy and his wife are residents of Ohio and intend to remain in the state. Additionally, because Randy has requested that the child live with him in Ohio, it is the forum which contains evidence concerning the child's present and future care, protection, training and personal relationships. Also, the child has spent a significant amount of time with Randy in Ohio and has spent summers with him for the past six years prior to this action. Thus, pursuant to the rationale in both Rayl and Shiver, we cannot say the trial court abused its discretion by exercising jurisdiction over the child custody dispute in this case. Stephanie's first assignment of error is meritless
 Custody Determination {¶ 30} As her second assignment of error, Stephanie claims:
 {¶ 31} "The trial court's judgment awarding custody to Appellee constituted an abuse of discretion because it was against the manifest weight of the evidence. The court gave serious consideration to only one statutory factor, the wishes of the child."
 {¶ 32} In making its determination that custody of the child should be awarded to Randy, the trial court found that Stephanie had been the de facto mother of the child for the past eight years. The trial court then proceeded to apply a change of circumstances test in making its determination. Stephanie claims regardless of whether the trial court treated the case as a change of custody situation or an initial custody determination, the record establishes that it was in the child's best interest for Stephanie to retain custody.
 {¶ 33} "Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court applied the abuse of discretion standard to custody cases in Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus, and held as follows: Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (Trickeyv. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)
 {¶ 34} "`The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.' Davis at 418, 674 N.E.2d 1159. In Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Oliver v. Arras
(Apr. 19, 2002), 5th Dist. No. 2001 AP 11 0105.
 {¶ 35} Before addressing Stephanie's argument, we must first determine which standard should in fact apply to the custody determination in this case. R.C. 3109.04(E)(1)(a), which governs modification of an existing decree allocating parental rights and responsibilities, requires a demonstration that there has been a change in circumstances brought about by facts that have changed since the date of the prior decree or which were unknown to the movant at that time. R.C. 3109.04(E)(1)(a). Once the court determines that a change in circumstances has occurred, the court may reallocate parental rights as necessitated by the best interests of the child. Id. In order to change the designation of the residential parent without the consent of the adverse party, the advantages of the modification must outweigh the potential for harm to the child. See R.C. 3109.04(E)(1)(a)(iii).
 {¶ 36} Here, however, there was no initial decree from the trial court because the parties did not file for divorce. Because there was no prior decree either allocating parental responsibilities or awarding custody, the trial court did not need to first look for a change in circumstances but, instead, could proceed directly to a best interest analysis. Although the trial court may have initially applied the wrong analysis, it ultimately addressed the best interests of the child. Thus, Stephanie was not prejudiced by the trial court adding this extra step of analysis. If anything, the error benefited Stephanie since the trial court required Randy to meet this additional burden.
 {¶ 37} The trial court properly applied the factors in R.C.3109.04:
 {¶ 38} (F)(1) "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 39} (a) "The wishes of the child's parents regarding the child's care;
 {¶ 40} (b) "If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 41} (c) "The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 42} (d) "The child's adjustment to the child's home, school, and community;
 {¶ 43} (e) "The mental and physical health of all persons involved in the situation;
 {¶ 44} (f) "The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 45} (g) "Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
* * *
 {¶ 46} (i) "Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 47} (j) "Whether either parent has established a residence, or is planning to establish a residence, outside this state." Id.
 {¶ 48} Although the statute states the trial court shall examine all relevant factors when allocating custody of a child, Stephanie claims the trial court focused solely on the child's desire to live with his father Randy. In its judgment entry, the trial court states that it has reviewed the requisite factors but has found none of the factors to outweigh the child's wishes. The trial court explains that the child gets along well with Randy's household members and has comfortable relationships with everyone in the home. Furthermore, the trial court notes that Randy testified there would be more physical affection shown in his home. However, the trial court goes on to note that for seven years Randy was aware that Stephanie was raising the child alone but failed to provide any monetary support. Finally, the trial court concluded that this one single negative factor "does not outweigh the other factors that support a finding that Little Randy's wishes to live with his father are in fact in his best interest."
 {¶ 49} Given the findings, it appears that both parents were equally fit to raise the child. However, the trial court was asked to decide whether the fact that Stephanie had raised the child alone for the past seven years was outweighed by the child's choice to live with Randy. The trial court simply decided that it did not.
 {¶ 50} We once again emphasize that the trial court was not required to determine there had been a change in circumstances, but instead, was making an initial determination as to custody. In light of the all the other factors the trial court was required to consider in determining the child's best interest, this evidence does not so overwhelmingly favor Stephanie as to render the trial court's decision against the manifest weight of the evidence. Stephanie's second assignment of error is also meritless.
 {¶ 51} Accordingly, Stephanie's assignments of error are meritless and the judgment of the trial court is affirmed.
Judgment affirmed.
Donofrio and Vukovich, JJ., concur.